Jaymie Parkkinen (SBN 318394)
jparkkinen@taulersmith.com
Kiran Sekhon (SBN 360474)
ksekhon@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Wendy Blalock*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY BLALOCK, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>FCA US, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive,<br><br>                Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1.    VIOLATION OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Wendy Blalock ("Plaintiff"), individually and on behalf of all others similarly situated, alleges as follows based on personal knowledge as to her own conduct and on information and belief as to all other matters:

**INTRODUCTION**

1. This case is about digital surveillance embedded in a consumer website. When Californians visit Defendant FCA US, LLC's ("Defendant") website, they reasonably expect a straightforward interaction: their browser requests a page, and the website returns it. Defendant added something else to this exchange: a tracking code that causes visitors' browsers to capture and export visitor-identifying information to a third-party data broker so the visit can be tied to an identity profile and used for cross-site tracking, targeting, and monetization.

2. Defendant owns and operates https://www.chrysler.com (the "Website"), which Defendant uses to market vehicles and related services to consumers in California and throughout the United States.

3. On the Website, Defendant embedded LiveRamp tracking software (the "Tracking Beacon"). The Tracking Beacon is a device or process that runs when a webpage loads and captures dialing, routing, addressing, and signaling information generated by the visitor's interaction with the Website and transmits that information to LiveRamp for identity matching and monetization.

4. The California Invasion of Privacy Act ("CIPA") prohibits installing or using a "trap and trace device" without first obtaining consent or a court order. Cal. Penal Code § 638.51(a). A "trap and trace device" includes any "device or process" that captures the incoming impulses identifying the dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication. Cal. Penal Code § 638.50(c).

5. By deploying the Tracking Beacon, Defendant turned ordinary browsing on the Website into a data-extraction event. Defendant captured and transmitted Californians' identifying signaling information to a third-party broker without the

CLASS ACTION COMPLAINT

consent or court order the law demands. Plaintiff brings this action on behalf of herself and a class of California residents to halt that surveillance.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the proposed Class consists of 100 or more members, the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists.

7. This Court has personal jurisdiction over Defendant because Defendant purposefully directed its conduct toward California by operating an interactive commercial Website to solicit and serve California consumers and by deriving substantial commercial benefit from California-based Website interactions. Defendant also implemented and maintained the Tracking Beacon on the Website to identify, profile, and monetize the activity of California residents, including Plaintiff. When Plaintiff accessed the Website from California, Defendant's tracking technologies collected routing information sufficient to recognize Plaintiff as a California user and then captured and transmitted Plaintiff's visitor-identifying dialing, routing, addressing, and signaling information to LiveRamp. Plaintiff's claims arise out of and relate to Defendant's forum-directed conduct, and the exercise of jurisdiction comports with due process and traditional notions of fair play and substantial justice.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's access to and use of the Website from this District and Defendant's collection, use, and transmission of Plaintiff's data in connection with that activity. Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant is subject to personal jurisdiction in this District and therefore resides here for venue purposes.

/ / /

3    CLASS ACTION COMPLAINT

## PARTIES

9.      Plaintiff Wendy Blalock is an individual, citizen, and resident of California.

10.      Defendant FCA US, LLC is a limited liability company formed under the laws of Delaware and maintains its principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

11.      Plaintiff alleges the fictitiously named defendants captioned hereinabove as Does 1 through 25, inclusive, and each of them, were in some manner responsible or legally liable for the actions, damages, events, transactions, and circumstances alleged herein. The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate, or otherwise are presently unknown to Plaintiff, and Plaintiff will amend this Complaint to assert the true names and capacities of such fictitiously named defendants when they have been ascertained. For convenience, each reference herein to the named Defendant shall also refer to the Doe defendants.

## FACTUAL ALLEGATIONS

**A.    *The Tracking Beacon Extracts and Transmits Visitor-Identifying Signals.***

12.      The Website's Tracking Beacon does not simply facilitate the delivery of webpages. It is engineered to extract and transmit a visitor's identifying dialing, routing, addressing, and signaling information for a separate purpose: to enable third-party identity matching and monetization.

13.      In ordinary browsing, certain technical exchanges occur so a browser can request and receive a page. But the identifying information at issue here is distinct. The Tracking Beacon deliberately captures and sends *additional* visitor-identifying signals to a third-party data broker so the broker can determine who the visitor is (or likely is) and link that visit to an identity profile. That extraction is not required to render the Website; it is implemented to create commercial value from Website visitors. The Tracking Beacon has no functional role in delivering website content; its sole purpose

4                              CLASS ACTION COMPLAINT

is to extract visitor-identifying signals for deanonymization and profiling.

14. The additional visitor-identifying signals captured by the Tracking Beacon include the addressing and routing data embedded in a visitor's web requests and the Website's responses; data that functions as the communication's "to/from" and routing instructions that can be used to recognize and link a visitor's communications over time.

15. In practical terms, the Tracking Beacon captures and transmits information such as: (i) the specific page and resource addresses the visitor requests from the Website (including paths and parameters identifying the content being requested); (ii) referrer and source fields showing how the visitor arrived at the Website and the prior page or channel that directed the request; (iii) browser- and device-signaling fields that describe the visitor's client environment (e.g., browser family and version, operating system family and version, language/locale settings, time zone, screen and rendering characteristics, and related client "fingerprint-like" attributes); and (iv) unique request and session identifiers and timestamps generated during the visit that allow multiple page requests to be grouped and attributed to the same source.

16. This information is distinct from the substance of the pages a visitor seeks to view. It is the identifying signaling and routing data that makes the visit linkable (i.e., data "reasonably likely to identify the source" of the visitor's electronic communications). Defendant captures and transmits this information through the Tracking Beacon not to display the Website, but to enable LiveRamp to recognize the visitor and associate the visit with an identity profile for targeting and monetization.

17. The Website is used not only for general marketing, but for consumer decision-making about major financial transactions, including researching specific vehicle models and trims, pricing, incentives, leasing or financing options, dealer selection, and related services. A visitor's navigation of these pages can reveal private facts about the visitor's finances, purchasing intent, timing, geographic location, and household needs. When those visitor-level signals are linked to an identity profile, they

CLASS ACTION COMPLAINT

become attributable to a specific individual rather than an anonymous browser session.

**B.   *LiveRamp Uses Captured Signals To Identify Visitors.***

18.      LiveRamp is a California data broker that specializes in deanonymizing website visitors by matching visit-level signals to a broader identity database and assigning or retrieving a persistent identifier associated with the visitor.

19.      The Tracking Beacon operates in three steps:

    a.      **Capture.** *First*, when a webpage loads, the Tracking Beacon captures the incoming impulses and visitor-identifying headers and signals that reveal the source of the visitor's electronic communications with the Website, such as page/resource addresses requested, referrer/source fields, browser/device signaling fields, and session/request identifiers sufficient to distinguish the visitor and support identity matching.

    b.      **Transmit.** *Second*, the Tracking Beacon transmits that identifying signaling information to LiveRamp contemporaneously with the Website visit.

    c.      **Match.** *Third*, LiveRamp combines the transmitted signals from the Website visit with information already maintained by LiveRamp to associate the visitor with an existing identity profile and persistent identifier used for cross-site tracking and targeting.

20.      Through this process, the Website visit is converted into a linkable record associated with a consumer identity profile that can be leveraged for targeting, measurement, and monetization beyond the Website itself.

21.      During Plaintiff's visit to the Website on August 24, 2025, Defendant caused the Tracking Beacon to run on Plaintiff's device and to capture and transmit Plaintiff's visitor-identifying dialing, routing, addressing, and signaling information to LiveRamp in real time. Plaintiff did not provide express, informed consent to this capture and transmission. Defendant did not obtain a court order authorizing it.

CLASS ACTION COMPLAINT

### C. *The Commercial Exploitation of Visitors' Profiles.*

22. Once a visitor's signals are linked to a broker profile, the visit can be used to enrich that profile and to support targeting far beyond the context of the Website visit. In this ecosystem, the value of the Tracking Beacon is its ability to identify the visitor and attach the visit to an identity record.

23. Data brokers openly market the ability to convert ordinary web activity into intimate, individualized profiles. Indeed, the CEO of the world's largest data broker recently bragged about the staggering extent to which data brokers secretly track internet users:

> [W]e know who she is, what she watches, what she reads, and who she lives with . . . Through the power of connected identity, we also know who she follows on social media, what she buys online and offline, where she buys, when she buys, and more importantly, why she buys. . . . We know that [she] has two children and that her kids drink lots of premium fruit juice. We can see that the price of the SKU she buys has been steadily rising on her local retailer's shelf. We can also see that [her] income has not been keeping pace with inflation.[1]

24. On information and belief, LiveRamp used Plaintiff's visitor-identifying signals to associate Plaintiff's Website visit with a LiveRamp profile and to enrich that profile with information about Plaintiff's interaction with the Website. On information and belief, Defendant obtains commercial value from this arrangement, including by enabling more precise audience building and targeted solicitation.

25. The consequences extend beyond advertising. Once visitor-identifying signals are linked to a broker-maintained identity profile, the data becomes portable: it can be sold, licensed, queried, or otherwise disclosed to a wide range of third parties and repurposed outside the context in which it was collected.

26. According to the Brennan Center for Justice:

---

[1] Lucas Ropek, *Data Broker Brags About Having Highly Detailed Personal Information on Nearly All Internet Users*, March 15, 2025 (gizmodo.com).

CLASS ACTION COMPLAINT

Among the main purveyors in this surveillance capitalism ecosystem are data brokers—companies that collect, assemble, and analyze personal information to create detailed profiles of individuals, which they then sell. . . . Myriad entities buy this information. For example, financial institutions and insurance firms use data for identity verification and risk assessments. Advertising companies use data to offer more relevant and targeted advertisements. More troublingly, data brokers have sold personal information to predatory loan companies, stalkers, and scammers, as well as to political consultants . . . that can use data to send voters disinformation and attempt to skew electoral outcomes. Data brokers also sell data to foreign actors whose uses of the information are not constrained by U.S. law. And . . . law enforcement and other government agencies (including state and local law enforcement, the FBI, the IRS, the Drug Enforcement Administration, the Department of Defense, and the Department of Homeland Security) have secretly been paying data brokers to access vast databases of personal information, including geolocation data, without any warrant, court order, or even subpoena.[2]

27.    The foreseeable risk created by Defendant's conduct is therefore not abstract: by converting Plaintiff's Website visit into a linkable identity record and exporting it into the broker ecosystem without consent, Defendant created an enduring data linkage that can be exploited long after Plaintiff's Website visit ends and far beyond the purpose for which Plaintiff accessed the Website.

28.    Defendant's conduct has caused, and continues to cause, injury to Plaintiff, and other similarly situated visitors, in concrete ways: Plaintiff's communications with the Website were converted into a linkable identity record without Plaintiff's consent; Plaintiff lost control over how the extracted visitor-identifying signals are used and disseminated; and Plaintiff faces an ongoing risk that this unlawfully created identity linkage will be repurposed, shared, or sold within the data-broker ecosystem for uses far removed from Plaintiff's purpose in visiting the Website.

---

[2] Emile Ayoub and Elizabeth Goitein, *Closing the Data Broker Loophole*, February 13, 2024 (brennancenter.org).

CLASS ACTION COMPLAINT

29. Defendant's deployment of the Tracking Beacon intentionally interfered with Plaintiff's private affairs in a manner a reasonable person would find highly offensive. It took what should have been an ephemeral website visit and disclosed the visitor's identifying signals to a third-party data broker for deanonymization and cross-context exploitation. The disclosure to LiveRamp itself, made without consent and for identity matching and monetization, constitutes a concrete invasion of privacy because it attributes personal browsing activity to a visitor's identity profile and exports it outside the consumer-website relationship.

## CLASS ACTION ALLEGATIONS

30. **Class Definition**. Plaintiff brings this action as a class action on behalf of herself and all others similarly situated as members of the "Class" defined as follows:

> **All persons in California whose visitor-identifying dialing, routing, addressing, or signaling information was captured and transmitted as a result of visiting the Website during the applicable limitations period.**

31. Excluded from the Class are: (i) Defendant and its parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; (ii) Defendant's officers and directors; (iii) the Court, the Court's staff, and any judicial officer assigned to this case and members of their immediate families; and (iv) any person who timely and validly opts out of the Class.

32. Plaintiff reserves the right to amend the Class definition as discovery and the Court's rulings warrant.

33. **Rule 23 Reference.** Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

34. **Numerosity.** The Class is so numerous that joinder is impracticable. The Website is a widely used consumer website. The Tracking Beacon operated automatically during Website visits and applied in the same manner to California visitors. Class members are therefore readily in the thousands, if not more, and can be identified through objective criteria, including Website visit records and data flows to

CLASS ACTION COMPLAINT

LiveRamp.

35.    **Commonality.** Common questions of law and fact exist, including:

a.    Whether Defendant deployed the Tracking Beacon on its Website;

b.    Whether the Tracking Beacon captured and transmitted visitor-identifying dialing, routing, addressing, and signaling information from Californians visiting the Website;

c.    Whether Defendant installed or used a "trap and trace device" or "device or process" within the meaning of Penal Code § 638.50(c);

d.    Whether Defendant obtained consent and/or a court order required by Penal Code § 638.51;

e.    Whether and to what extent statutory damages and injunctive relief are available under Penal Code § 637.2; and

f.    The proper measure of statutory damages and the scope of injunctive relief.

36.    **Predominance.** Common issues predominate. Defendant's deployment of the Tracking Beacon was uniform, and the key issues are capable of resolution using common proof, including Defendant's Website implementation, technical logs, vendor documentation, and LiveRamp records. Individualized inquiries are not necessary to determine liability because the challenged conduct is the same for all Class members.

37.    **Typicality.** Plaintiff's claims are typical of the Class because Plaintiff, like every Class member, visited the Website from California and was subjected to the same uniform practice: the Tracking Beacon's capture and transmission of visitor-identifying dialing, routing, addressing, and signaling information.

38.    **Superiority.** A class action is superior to other methods of adjudication. The statutory damages available for each Class member are not likely to support individual litigation, and resolving these claims in a single proceeding will conserve judicial resources, avoid inconsistent outcomes, and provide an efficient mechanism for relief.

39.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests align with those of the Class, and Plaintiff has retained counsel with substantial experience litigating privacy and complex class actions. Plaintiff has no interests antagonistic to the Class.

40.    **Injunctive Relief.** Defendant has acted on grounds generally applicable to the Class by deploying the Tracking Beacon in a uniform manner on the Website. Plaintiff therefore seeks final injunctive and declaratory relief appropriate to the Class as a whole, including an order prohibiting Defendant from capturing and transmitting visitor-identifying dialing, routing, addressing, and signaling information via the Tracking Beacon without the consent and/or court order required by California law.

41.    **Notice.** Plaintiff will propose and submit to the Court a plan for providing the best notice practicable under the circumstances to Class members, including individual notice to the extent Class members can be identified through reasonable effort, and will request that such notice be provided consistent with Fed. R. Civ. P. 23 and due process.

## COUNT I: VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW, CAL. PENAL CODE § 638.51

### (*On Behalf of Plaintiff and the Class*)

42.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

43.    CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

44.    CIPA prohibits any person from installing or using a trap and trace device without first obtaining consent or a court order. Cal. Penal Code § 638.51(a).

45.    Defendant installed and used the Tracking Beacon on the Website. The

11                                          CLASS ACTION COMPLAINT

Tracking Beacon is a "device or process" within the meaning of § 638.50(c) because it operates during Website visits to capture incoming electronic impulses and extract visitor-identifying dialing, routing, addressing, and signaling information.

46.    As alleged herein, the Tracking Beacon captures and transmits, among other things, addressing and routing information, referrer and source fields, browser- and device-signaling fields, and unique request and session identifiers and timestamps—information reasonably likely to identify the source of a visitor's electronic communications.

47.    The Tracking Beacon is "reasonably likely" to identify the source of those electronic communications. It is deployed for that purpose: to enable LiveRamp to recognize the same visitor across multiple communications and to associate the visitor's Website activity with an identity profile used for targeting and monetization.

48.    Defendant installed and used the Tracking Beacon without first obtaining a court order authorizing the installation or use of a trap and trace device or process.

49.    On August 24, 2025, Plaintiff visited the Website from California. During Plaintiff's visit, Defendant caused the Tracking Beacon to run on Plaintiff's device and to capture and transmit Plaintiff's visitor-identifying dialing, routing, addressing, and signaling information to LiveRamp in real time.

50.    On information and belief, Defendant deployed the Tracking Beacon in the same manner for other California visitors to the Website during the Class period, causing the same capture and transmission of visitor-identifying dialing, routing, addressing, and signaling information to LiveRamp.

51.    Plaintiff did not provide express, informed consent to Defendant's installation or use of the Tracking Beacon, including Defendant's capture and transmission of Plaintiff's visitor-identifying dialing, routing, addressing, and signaling information to LiveRamp for identity matching and monetization. On information and belief, Defendant likewise did not obtain express, informed consent from Class members.

CLASS ACTION COMPLAINT

52. By installing and using the Tracking Beacon without the consent and/or court order required by CIPA, Defendant violated Penal Code § 638.51.

53. Plaintiff and Class members suffered injury because Defendant captured and transmitted their visitor-identifying dialing, routing, addressing, and signaling information without consent. That capture and third-party disclosure for identity matching is a concrete invasion of privacy because it interferes with Class members' private affairs and discloses their visitor-identifying signals to a data broker for deanonymization and cross-site profiling—conduct a reasonable person would find highly offensive when imposed without consent.

54. Pursuant to Penal Code § 637.2, Plaintiff and the Class seek statutory damages, injunctive relief, and such other relief as the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

1. Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

2. Declare that Defendant's conduct as alleged herein violates California Penal Code §§ 638.50(c) and 638.51;

3. Issue an order requiring Defendant to delete and cease retaining any visitor-identifying dialing, routing, addressing, and signaling information captured or received through the Tracking Beacon, and to take commercially reasonable steps to direct its service providers (including LiveRamp) to do the same to the extent Defendant has the right or ability to do so;

4. Award statutory damages to Plaintiff and the Class pursuant to California Penal Code § 637.2;

5. Award injunctive relief requiring Defendant to cease installing and/or

CLASS ACTION COMPLAINT

using the Tracking Beacon or any trap and trace device or process on the Website without the consent and/or court order required by California Penal Code § 638.51, and requiring such further injunctive relief as the Court deems just and proper;

6.    Award Plaintiff and the Class their reasonable attorneys' fees and costs to the extent permitted by law;

7.    Award pre-judgment and post-judgment interest as permitted by law; and

8.    Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury for all issues triable to a jury.


DATED: January 27, 2026                    TAULER SMITH LLP

                                            */s/ Jaymie Parkkinen*
                                            Jaymie Parkkinen

                                            *Attorneys for Plaintiff*
                                            *Wendy Blalock*