**KLEIN THOMAS LEE & FRESARD**
Kristyn Wong (SBN: 346644)
Email: kristyn.wong@kleinthomaslaw.com
1920 Main Street, Suite 230
Irvine, CA 92614
Office: (949) 676-4570

Thomas L. Azar (*pro hac vice*)
Email: tom.azar@kleinthomaslaw.com
Sarah K. Molina (*pro hac vice*)
Email: sarah.molina@kleinthomaslaw.com
100 N. Broadway, Suite 1600
St. Louis, MO 63102
Office: (314) 888-2970

*Attorneys for Defendant FCA US LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| WENDY BLALOCK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FCA US, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | **CASE NO.: 8:26-cv-00201 DMG (KESx)**<br><br>*Assigned to: Dolly M. Gee*<br>*Magistrate Judge: Karen E. Scott*<br><br>**FCA US LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Action Filed: January 26, 2026<br>DATE: May 22, 2026<br>TIME: 9:30 a.m.<br>JUDGE: Hon. Dolly M. Gee<br>COURTROOM: 8C |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 22, 2026, at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8C of the First Street Courthouse, 350 W. 1st Street, 5th Floor, Los Angeles, California 90012, Defendant FCA US, LLC will and hereby does move this Court for an order under Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6) dismissing Plaintiff's Class Action Complaint.

This motion is made on the grounds that Plaintiff lacks standing and has failed to state any legally cognizable claim. It is based on this Notice of Motion, the following Memorandum of Points and Authorities, and on such other and further matters as may be presented to the Court at or prior to the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 18, 2026.

DATED: March 25, 2026 KLEIN THOMAS LEE & FRESARD

By: /s/ *Kristyn Wong*
Kristyn Wong
Thomas L. Azar
Sarah K. Molina
*Attorneys for Defendant*
*FCA US LLC*

**TABLE OF CONTENTS**


| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTS ALLEGED | 1 |
| III. | PLAINTIFF LACKS STANDING | 3 |
| IV. | PLAINTIFF FAILS TO STATE A CLAIM | 5 |
| V. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................... 5, 6

*Aviles v. Liveramo, Inc.*,
2025 Cal. Super. LEXIS 776 (Cal. Super. Ct. Jan. 28, 2025) .............................. 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................... 5

*Columbia Pictures, Inc. v. Bunnell*,
245 F.R.D. 443 (C.D. Cal. 2007) ........................................................... 8

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ................................................ 10

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001) ................................................................... 10

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................................................... 10

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ...................................................... 8

*In re Meta Pixel Tax Filing Cases*,
2025 WL 2243615 (N.D. Cal. Aug, 6, 2025 .................................................. 9

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ................................................ 7

*Lakin v. Watkins Associated Indus.*,
6 Cal. 4th 644 (1993) ..................................................................... 7

*Licea v. Hickory Farms, LLC*,
2024 Cal. Super. LEXIS 66498 (Cal. Super. Ct. March 13, 2024) ........................... 10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................................................................... 3

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ............................................... 8

*Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ........................................................5

*Mitchener v. CuriosityStream, Inc.*, -- F.Supp.3d -- , 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) .................... 4, 5, 7

*Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986 (9th Cir. 2023).........................................................................4

*Price v. Headspace, Inc.*, 2025 WL 1237977 (Cal. Super. Ct. Apr. 1, 2025) ................................................7

*Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802 (N.D. Cal. July 18, 2025) ......................................................9

*Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013).......................................................................3

*Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 Cal. Super. LEXIS 84257 (Cal. Super. Ct. Dec. 10, 2025)..........................6

*Sanchez v. Cars.com Inc.*, 2025 Cal. Super. LEXIS 710 (Cal. Super. Ct. Jan. 27, 2025)...............................6

*Scharon v. Paramount Glob.*, 2025 Cal. Super. LEXIS 60786 (Cal. Super. Ct. Oct. 3, 2025) ............................6

*Sparshott v. Feld Ent., Inc.*, 311 F.3d 425 (D.C. Cir. 2002)...................................................................10

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ...................................................................................4

**Statutes**

Cal. Pen. Code § 630, *et seq.* ("CIPA") ........................................................ *passim*

**Other Authorities**

2015 Cal. Assembly Bill No. 929, Cal. 2015-2016 Regular Session (Hearing, Assembly Committee on Privacy and Consumer Protection April 21, 2015) .......8

## I. <u>INTRODUCTION</u>

In this putative class action, Plaintiff Wendy Blalock alleges FCA US LLC ("FCA US") violated California's "trap and trace" statute by using software on its own website that collects information from incoming web visits to create an "identity record." She says the existence of this record creates a ***"risk"*** her information could potentially be repurposed, shared, or sold. *See* Class Action Complaint ("CAC"), ECF #1, ¶¶ 27-28 (emphasis added). Plaintiff lacks standing to bring this claim on behalf of herself (not to mention a class) because she does not allege that she has actually suffered any concrete harm as a result of the collection of her non-private information. And, even if she had actually alleged she was harmed, Plaintiff fails to state any claim under Cal. Penal Code § 638.51 because the alleged software simply does not meet the statutory definition of a trap and trace device. For these and the other reasons set forth herein, this case should be dismissed.

## II. <u>FACTS ALLEGED</u>

FCA US is an automobile manufacturer that owns and operates the www.chrysler.com website (the "Chrysler website"), which it uses to market vehicles to consumers throughout the United States. *See* CAC, ¶¶ 1-2. Consumers can use the Chrysler website to research "specific vehicle models and trims, pricing, incentives, leasing or financing options, dealer selection, and related services." *Id.* at ¶ 17. Plaintiff alleges that shopping for vehicles on the Chrysler website can "reveal private facts" such as the type of car a person is interested in, their general geographic location, finances, and their household vehicle needs. *Id.*

Plaintiff alleges the Doe 1-25 defendants listed in the CAC are unknown individuals or entities who are in "some manner responsible" for the actions and events in Plaintiff's complaint. *Id.* at ¶ 11. Plaintiff does not specify in what manner or for which actions, events, transactions or circumstances the Doe defendants are responsible or whether they are also responsible for Plaintiff's own act of visiting the Chrysler website. *Id.*

Plaintiff pleads she is a California resident who visited the Chrysler website on August 24, 2025. *Id.* at ¶¶ 9, 21. She does not identify which part(s) of the website (*e.g.*, pages concerning available models or trim, financing options, or "find a dealer" pages) she visited. *See generally* CAC. Plaintiff also does not allege that she provided any information about her finances during her visit. *Id.*

Instead, she alleges that FCA US installed on its own website software from LiveRamp that "captures dialing, routing, addressing, and signaling information" obtained when a visitor visits and interacts with the website. *Id.* at ¶ 3. The software then sends that information to LiveRamp. *Id.* The information the software collects during a website visit consists of "addressing and routing data embedded in a visitor's web requests and the Website's responses; data that functions as the communication's 'to/from' and routing instructions" which, she says, is different than the "technical exchanges [that] occur so a browser can request and receive a page." *Id.* at ¶¶ 13-14. Plaintiff alleges the software can capture and transmit:

> "(i) the specific page and resource addresses the visitor requests from the Website (including paths and parameters identifying the content being requested); (ii) referrer and source fields showing how the visitor arrived at the Website and the prior page or channel that directed the request; (iii) browser- and device-signaling fields that describe the visitor's client environment (e.g., browser family and version, operating system family and version, language/locale settings, time zone, screen and rendering characteristics, and related client "fingerprint-like" attributes); and (iv) unique request and session identifiers and timestamps generated during the visit that allow multiple page requests to be grouped and attributed to the same source screen and rendering characteristics, and related client "fingerprint-like" attributes); and (iv) unique request and session identifiers and

timestamps generated during the visit that allow multiple page requests to be grouped and attributed to the same source.

*Id.* at ¶ 15. Plaintiff says the purpose of the software is to be able to identify the website visitor. *Id.* at ¶ 16.

According to Plaintiff, LiveRamp can match the information obtained "with an existing identity profile and persistent identifier" it already possesses to track and target visitors across other websites. *Id.* at ¶ 19c. She alleges the software "capture[d] and transmit[ted] Plaintiff's visitor-identifying dialing, routing, addressing, and signaling information to LiveRamp in real time" without her consent during her August 24, 2025 visit. *Id.* at ¶ 21. Plaintiff says she was harmed because her communications with the Chrysler website can identify her if they are linked or matched to her other website visits in the "data-broker ecosystem," and if matched, could be sold or shared. *Id.* at ¶¶ 18-20, 22, 28. Plaintiff does not allege that she has an "existing identity profile" or "persistent identifier," or even that she has visited other sites which would make such matching or linking in the "data-broker ecosystem" a possibility. *See generally* CAC.

## III. <u>PLAINTIFF LACKS STANDING</u>

"In the absence of standing, a federal court lacks subject matter jurisdiction over the suit." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013) (quotations omitted). To have standing under Article III, a plaintiff must show an injury that is fairly traceable to the defendant's conduct and that courts can provide adequate redress for the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560.

Even where a statutory violation is alleged, Supreme Court precedent confirms that "[o]nly those plaintiffs who have been *concretely harmed* by [the] violation may sue … in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413,

427 (2021). That is because an injury in law does not equate to an injury in fact, and the mere fact that the California legislature created a statutory prohibition and a cause of action does not relieve courts of their responsibility to independently decide if a plaintiff has suffered a concrete harm. *See id.* The requirement for a concrete injury in fact here is even clearer, since CIPA creates a private right of action, but only where the individual "has been injured by a violation of this chapter." Cal. Penal Code § 637.2.

In the privacy context, the retention of "illegally obtained records . . . without more, does not give rise to a concrete injury necessary for standing," and plaintiffs must show another harm that constitutes a concrete injury. *Phillips v. U.S. Customs & Border Prot.,* 74 F.4th 986, 988 (9th Cir. 2023). "To sufficiently allege an injury in fact and "survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Mitchener v. CuriosityStream, Inc.*, -- F.Supp.3d -- , 2025 WL 2272413, at *3 (N.D. Cal. Aug. 6, 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) (cleaned up).

Here, Plaintiff alleges the LiveRamp software "capture[d] and transmit[ted] her visitor-identifying dialing, routing, addressing, and signaling information to LiveRamp in real time" without her consent and says her communications with the Chrysler website can identify her ***if*** they are linked or matched to her other website visits or "an existing identify profile" or "persistent identifier" in the "data-broker ecosystem." CAC at ¶ 18-22, 28. But Plaintiff does not allege that her visit to the Chrysler website was in fact linked or matched to any visits to other websites, or to any "existing identity profile" or "persistent identifier." In fact, she does not even allege that she previously visited any websites with similar software or that she has an "existing identity profile" or "persistent identifier" to which her information could be matched. In essence, her claimed harm is that ***if*** she had visited another website and ***if*** that website shared information with the "data-broker ecosystem" and

***if*** the result of that sharing was the creation of an "identity profile," then the information obtained on August 24, 2025 creates "a risk" that her information could be sold or shared. That is not a concrete injury. *Id.*; *see also Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *6 (S.D. Cal. Feb. 23, 2026).

Even if Plaintiff had alleged the information obtained was linked to her identity profile (and she does not), she still would not have standing because courts consistently find that individuals do not have a privacy interest in the type of information she claims was collected. The mere "collection of basic contact information by software, or where the plaintiffs merely visited the website, are not concrete harms." *Mitchener*, 2025 WL 2272413, at *4 (cleaned up). There is no invasion of the right to privacy when a defendant "only collects information regarding the 'metadata' of the communication … because [a plaintiff] has no expectation of privacy as to that type of data." *Id.* at *5. Here, the only information that was collected about Plaintiff was the metadata of the communication such as her "dialing, routing, addressing, and signaling information." CAC at ¶ 21. She does not allege that she provided any personal, private, or sensitive information in which she would have a reasonable expectation of privacy. She therefore lacks standing on that basis too, so her claims should be dismissed.

## IV. PLAINTIFF FAILS TO STATE A CLAIM

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires a plaintiff "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64. And although for the purposes of a motion to dismiss, the court "must take all of the factual allegations in the complaint as true, [it is] not bound to accept

as true a legal conclusion couched as a factual allegation." *Id.* at 678.

CIPA, California Penal Code § 638.51(a) and (b)(5), prohibits the installation of a "trap and trace device" without first obtaining the user's consent or a court order pursuant to § 638.52 or 638.53. Under this statute, a "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). The statute contains several exceptions, including "to operate, maintain, and test" an electronic communication service, to "record the fact that a wire or electronic communication was initiated or completed to protect the provider," and "if the consent of the user of that service has been obtained." Cal. Penal Code § 638.51(b). Plaintiff's claim fails for several independent reasons.

***First***, California state courts find that the "trap and trace" statute does not apply to internet communications. *See, e.g.*, *Sanchez v. Cars.com Inc.*, 2025 Cal. Super. LEXIS 710, at **5-9 (Cal. Super. Ct. Jan. 27, 2025) (rejecting extension of CIPA's pen register provision to internet communications based on the statutes' "plain language and legislative intent"); *Scharon v. Paramount Glob.*, 2025 Cal. Super. LEXIS 60786, at **3-6 (Cal. Super. Ct. Oct. 3, 2025) (similar); *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 Cal. Super. LEXIS 84257, at **6-13 (Cal. Super. Ct. Dec. 10, 2025) ("CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software.").

This interpretation is consistent with the statutory language that limits trap and trace violations to when a device is employed without either the user's consent or without a court order "pursuant to Section § 638.52 or 638.53." *See* Cal. Penal Code § 638.51(a). The statute requires the court order to "specify … [t]he number and, if known, physical location of the ***telephone line*** to which the … trap and trace is to

be attached." Cal. Penal Code § 638.52(d)(3) (emphasis added); *see also* § 638.53(a)(1) (requiring compliance with § 638.52).

The California Supreme Court instructs that when interpreting statutory provisions, "each sentence must be read not in isolation but in the light of the statutory scheme," so "[a]n interpretation that renders related provisions nugatory must be avoided." *Lakin v. Watkins Associated Indus.*, 6 Cal. 4th 644, 659 (1993). Under the California rules of statutory construction, because the statutory provision for court orders applies only to trap and trace devices attached to "telephone line[s]," and § 638.51 refers to such court orders, 638.51 must also apply only to telephone lines. Extending § 638.51 to internet communications would render the provision allowing for court orders "nugatory." *Id.*

***Second,*** Plaintiff's "trap and trace" claim fails because the statutory definition of "trap and trace device" does ***not*** include devices or processes that record or decode "the contents of a communication." *See* Cal. Penal Code § 638.50. "For purposes of § 638.51, 'trap and trace devices' by definition are tools which provide information about the 'who,' 'when,' and 'where' of communications—but not the 'what.'" *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, *5 (N.D. Cal. Aug. 6, 2025) (quoting *Price v. Headspace, Inc.*, 2025 WL 1237977, *3 (Cal. Super. Ct. Apr. 1, 2025). Yet, Plaintiff explicitly pleads the pixel captures and transmits the contents of the communication, including "(i) the specific page and resource addresses the visitor requests from the Website (***including paths and parameters identifying the content being requested***)…." CAC at ¶ 15 (emphasis added).

Courts reject the notion that devices alleged to be able to collect such "what" information fall within the scope of the "trap and trace" law, or can plausibly be alleged to violate it. *See, e.g.*, *Mitchener*, 2025 WL 2272413, at *5; *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, *4 (N.D. Cal. June 24, 2025). Here, Plaintiff expressly alleges the website tool ***can*** capture the "what" (*i.e.*, "the content being requested"), so it cannot constitute a trap and trace device as a matter

of law.

Even if Plaintiff had not admitted the software captures the content being requested (and she does), her claim would still fail because the "path" and "parameters" qualify as the content of a communication under CIPA, as "they concern the substance of a communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 & n. 10 (N.D. Cal. 2022); *see also M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024) (finding the "path" to constitute the contents of the communication under CIPA). Because Plaintiff alleges the installed software can capture the "what" (*i.e.*, the content of her communication with the Chrysler website), it cannot constitute a trap and trace device as a matter of law. *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007) ("Because the May 29 Order requires the production of the contents of communications, Defendants have not been ordered to install a pen register or trap and trace device.").

***Third,*** even if the software could not capture the contents of the communication (and Plaintiff alleges it can), the legislative history of § 638.51 makes clear that installing a tracking device or process ***on your own*** line or service is not encompassed within the trap and trace law. Indeed, the hearings on adoption of the law (whose purpose was "to authorize state and local law enforcement to seek emergency orders for pen registers/trap and trace devices used in telephone surveillance") explained that pen "registers/trap and trace devices are used by law enforcement for telephone surveillance to record incoming and outgoing phone numbers from a tapped line." 2015 California Assembly Bill No. 929, California 2015-2016 Regular Session (Hearing, Assembly Committee on Privacy and Consumer Protection April 21, 2015). As a matter of common sense, a person cannot "tap" their own line or device.[1] But here, Plaintiff alleges that FCA US installed

---

[1]Indeed, cases allowing § 638.51 trap and trace claims to proceed typically involve lawsuits against ***the third-party*** tracking the information and ***not*** the

software on its own website to capture "incoming" impulses. CAC ¶¶ 2-3, 19a. While Plaintiff also vaguely alleges that FCA US caused the software "to run" on her device, she provides no facts to plausibly explain how a tool on the Chrysler website that tracks incoming impulses would "run" on her device. *Id.* at 2-3, 19a, 21. And, even if she had, that software would not be a trap and trace device under the statutory definition because the information obtained from her device would not be "incoming." Because Plaintiff's claim is that software tracking incoming impulses was placed on FCA US's website, her trap and trace claim must fail.

***Fourth,*** Plaintiff's claim also fails because what she alleges is simply the internet equivalent of "Caller ID." Section 638.51 includes an exception for the use of pen registers and trap and trace devices "if the consent of the user of that service has been obtained." Cal. Pen. Code § 638.51(b)(5). Here, based on Plaintiff's own allegations, FCA US (and not Plaintiff) is the "user" of the LiveRamp software, and FCA US has obviously "consented" to its use on its website. *See, e.g.*, CAC ¶ 1-3 ("On the Website [owned and operated by Defendant], Defendant embedded LiveRamp tracking software…"); *id.* at ¶ 45 ("Defendant ***installed and used*** the Tracking Beacon on the Website."); id. at ¶ 48 ("Defendant ***installed and used*** the Tracking Beacon…") (all emphases added).

The statute's use of the singular "user" for § 638.51's consent requirement distinguishes the trap and trace provision from other provisions of CIPA, such as § 631's prohibition on wiretapping, that require the consent of "all parties." Indeed, if it were necessary to obtain the consent of all parties before installing a trap and trace device, then "it is hard to see how any caller ID system, even that used for

---

operator of the website where the pixels were installed. *See, e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, **3, 11-12 (N.D. Cal. July 18, 2025) (allowing § 638.51 claim against a data broker that installed cookies and pixels on CVS website); *In re Meta Pixel Tax Filing Cases*, 2025 WL 2243615, **1, 3 (N.D. Cal. Aug, 6, 2025 (allowing § 638.51 claim against Meta for installing pixels on tax preparer websites).

emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting an identical provision of federal law on which § 638.51 was modeled). After all, a caller ID system also enables the recipient of an inbound communication to capture the identity of the initiating party. *See id.*

Therefore, if statutes like § 638.51 were interpreted (contrary to their text) to require the consent of all parties to any communication, then all users of caller ID would be subject to criminal liability—since such users do not first obtain consent from incoming callers before retrieving their identity through the caller ID system. *See id.; see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 507-10 (S.D.N.Y. 2001) (finding website operators—not the website visitors—are the "users" of advertising cookies placed on their website, so a similar consent exception in the Electronic Communications Privacy Act applied). The same reasoning applies to § 638.51. Plaintiff expressly alleges FCA US "installed and used" the software on its own website, so the "user" consent exception under § 638.51(b)(5) applies to FCA US. CAC ¶¶ 45, 48. As a result, Plaintiff's claim fails for this additional reason.

***Finally,*** when interpreting ambiguous criminal statutes in California, courts apply the rule of lenity—even when the statute is being invoked (as here) in a civil action. *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001); *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, *1 (N.D. Cal. Oct. 17, 2025). That numerous California courts have found the alleged behavior does not constitute a trap and trace violation for the reasons above amply demonstrates that the statute certainly can (and should) be interpreted that way. So, even if the Court decides there is ambiguity as to the breadth of the statute, the rule of lenity should apply. *See, e.g.*, *Aviles v. Liveramo, Inc.*, 2025 Cal. Super. LEXIS 776, *6 (Cal. Super. Ct. Jan. 28, 2025); *Licea v. Hickory Farms, LLC,* 2024 Cal. Super. LEXIS 66498, *10 (Cal. Super. Ct. March 13, 2024).

/ / /

/ / /

## V. CONCLUSION

For the reasons above, the Court should dismiss the Complaint with prejudice.

Dated: March 25, 2026

**KLEIN THOMAS LEE & FRESARD**

By: /s/ *Kristyn Wong*
Kristyn Wong (346644)
Thomas L. Azar (*pro hac vice*)
Sarah K. Molina (*pro hac vice*)

*Attorneys for Defendant FCA US LLC*

# CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on **March 25, 2026**, a true and correct copy of the foregoing **MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** was filed with the Clerk using the CM/ECF system, which will provide notice to the following counsel of record:

Jaymie Parkkinen (SBN 318394)
Kiran Sekhon (SBN 360474)
**TAULER SMITH LLP**
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017

Attorneys for Plaintiff
WENDY BLALOCK

Tel: (213) 927-9270
Fax: (949) 706-6469
Email: jparkkinen@taulersmith.com
ksekhon@taulersmith.com

Samie Long