**KLEIN THOMAS LEE & FRESARD**
Kristyn Wong (SBN: 346644)
Email: kristyn.wong@kleinthomaslaw.com
1920 Main Street, Suite 230
Irvine, CA 92614
Office: (949) 676-4570

Thomas L. Azar (*Admitted pro hac vice*)
Email: tom.azar@kleinthomaslaw.com
Sarah K. Molina (*Admitted pro hac vice*)
Email: sarah.molina@kleinthomaslaw.com
100 N. Broadway, Suite 1600
St. Louis, MO 63102
Office: (314) 888-2970

*Attorneys for Defendant FCA US LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| WENDY BLALOCK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FCA US, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | **CASE NO.: 8:26-cv-00201 DMG (KESx)**<br><br>*Assigned to: Dolly M. Gee*<br>*Magistrate Judge: Karen E. Scott*<br><br>**FCA US LLC’S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS’ FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Action Filed: January 26, 2026<br>DATE: July 17, 2026<br>TIME: 9:30 a.m.<br>JUDGE: Hon. Dolly M. Gee<br>COURTROOM: 8C |

/ / /

/ / /

/ / /

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 17, 2026, at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8C of the First Street Courthouse, 350 W. 1st Street, 5th Floor, Los Angeles, California 90012, Defendant FCA US LLC will and hereby does move this Court for an order under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing Plaintiff's Class Action Complaint.

This motion is made on the grounds that Plaintiff lacks standing and has failed to state any legally cognizable claim. It is based on this Notice of Motion, the following Memorandum of Points and Authorities, and on such other and further matters as may be presented to the Court at or prior to the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 8, 2026.

DATED: May 15, 2026 KLEIN THOMAS LEE & FRESARD

By: /s/ *Kristyn Wong*
Gregory P. Gilmer
Kristyn Wong
Thomas L. Azar, Jr. (*Pro Hac Vice*)
Sarah K. Molina (*Pro Hac Vice*)
Attorneys for Defendant
FCA US LLC

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.....i

TABLE OF AUTHORITIES.....ii

I. INTRODUCTION.....1

II. BACKGROUND.....2

III. ARGUMENT.....4

A. The Legal Standards.....4

B. Dismissal Under Rule 12(b)(1).....4

C. Dismissal Under Rule 12(b)(6).....9

*1. The "Trap And Trace" Claim Fails (Count I)*.....9

*2. The Intrusion Upon Seclusion Claim Fails (Count II)*.....15

IV. CONCLUSION.....17

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3, 4

*Aviles v. Liveramo, Inc.*,
2025 Cal. Super. LEXIS 776 (Cal. Super. Ct. Jan. 28, 2025)....................14

*Aviles v. Liveramp, Inc.*, No. 24STCV19869,
2025 Cal. Super. LEXIS 776 (Cal. Super. Ct. Jan. 28, 2025)....................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Columbia Pictures, Inc. v. Bunnell*,
245 F.R.D. 443 (C.D. Cal. 2007)....................9

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................16

*Crowley v. CyberSource Corp.*,
166 F.Supp.2d 1263 (N.D. Cal. 2001)....................11

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)....................3

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)....................14

*Esparza v. Kohl's, Inc.*,
723 F.Supp.3d 934 (S.D. Cal. 2024)....................16

*G.B. by and through G. P. v. EPA*,
172 F.4th 1042 (9th Cir. 2026)....................8

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023)....................15

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. 2023)....................10

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001)....................14

*Heerde v. Learfield Commc'ns, LLC*,
741 F.Supp.3d 849 (C.D. Cal. 2024)....................15

*Heiting v. HP Inc.*, No. 24STCV29634,
2025 Cal. Super. LEXIS 60774 (Cal. Super. Ct. Aug. 1, 2025)....................12

*Hernandez v. Hillsides, Inc.*,
47 Cal.4th 272 (2009)....................15

*In re Doubleclick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................5, 8, 16

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014)....................16

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F.Supp.2d 299 (E.D.N.Y. 2005)....................11

*In re Meta Pixel Tax Filing Cases*,
2025 WL 2243615 (N.D. Cal. Aug, 6, 2025)....................11

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024)....................16

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025)....................9

*Lakin v. Watkins Associated Indus.*,
6 Cal. 4th 644 (1993)....................14

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F.Supp.3d 1072 (C.D. Cal. 2024)....................15

*Licea v. Hickory Farms LLC*, No. 23STCV26148,
2024 Cal. Super. LEXIS 66498 (Cal. Super. Ct. Mar. 13, 2024)....................12, 14

*Low v. LinkedIn Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. July 12, 2012) ..... 16

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ..... 7

*Magliocca v. United Healthcare Servs., Inc.*,
2026 WL 878694 (E.D. Cal. Mar. 31, 2026) ..... 6

*Mitchener v. CuriosityStream, Inc.*,
815 F.Supp.3d 845 (N.D. Cal. 2025) ..... 6, 9

*Myers v. Dick's Sporting Goods, Inc.*,
2026 WL 1045528 (E.D. Cal. Apr. 17, 2026) ..... 15

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..... *passim*

*Price v. Headspace, Inc.*,
2025 WL 1237977 (Cal. Super. Ct. Apr. 1, 2025) ..... 9

*Riganian v. LiveRamp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. July 18, 2025) ..... 11

*Rodriguez v. Ink Am. Int'l Grp. LLC*, No. 25STCV15350,
2025 Cal. Super. LEXIS 84257 (Cal. Super. Ct. Dec. 10, 2025) ..... 13

*Saleh v. Nike, Inc.*,
562 F.Supp.3d 503 (C.D.Cal. 2021) ..... 15

*Sanchez v. Cars.com Inc.*, No. 24STCV13201,
2025 Cal. Super. LEXIS 710 (Cal. Super. Ct. Jan. 27, 2025) ..... 13

*Schallert v. Orkin LLC*, No. 24STCV31244,
2025 Cal. Super. LEXIS 85120 (Cal. Super. Ct. Dec. 15, 2025) ..... 13

*Schallert v. Palo Alto Networks*, No. 25STCV17109,
2026 Cal. Super. LEXIS 24039 (Cal. Super. Ct. Mar. 6, 2026) ..... 13

*Scharon v. Paramount Glob.*, No. 25STCV10585,
2025 Cal. Super. LEXIS 60786 (Cal. Super. Ct. Oct. 3, 2025) ..... 13

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976)....................3

*Sisti v. Bosley Inc.*,
– F.Supp.3d – , 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026)....................6

*Sparshott v. Feld Entm't*,
311 F.3d 425 (D.C. Cir. 2002)....................10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................4

*Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024),
*aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025)....................15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................4, 5, 7, 8

*U.S. v. Forrester*,
512 F.3d 500 (9th Cir. 2008)....................12

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021)....................9

*Warth v. Seldin*,
422 U.S. 490 (1975)....................3

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)....................15

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F.Supp.3d 1139 (E.D. Cal. 2025)....................6, 7

*Yoon v. Lululemon USA, Inc.*,
549 F.Supp.3d 1073 (C.D.Cal. 2021)....................6

**Statutes**

Cal. Penal Code § 637.2....................4

Cal. Penal Code § 638.50....................9

Cal. Penal Code § 638.50(c) ....................9

Cal. Penal Code § 638.51 ........................................................ 2, 3, 8, 11

Cal. Penal Code § 638.51(a) ........................................................ 13, 14

Cal. Penal Code § 638.51(b) ........................................................ 9, 10, 12

Cal. Penal Code § 638.52 ........................................................ 13, 14

Cal. Penal Code 638.53 ........................................................ 13

Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 3127(3) and (4)....9

Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 3121(b) ................10

**Other Authorities**

2015 California Assembly Bill No. 929, California 2015-2016 Regular Session (Hearing, Assembly Committee on Privacy and Consumer Protection April 21, 2015) ........................................................ 11

**Rules**

Fed. R. Civ. Proc. 12(b)(1) ........................................................ 3

Fed. R. Civ. Proc. 12(b)(6) ........................................................ 3, 8

## I. INTRODUCTION

In this putative class action, Plaintiff Wendy Blalock alleges FCA US LLC ("FCA US") violated California's "trap and trace device" statute and violated her privacy. She bases this on allegations FCA US uses "Tracking Beacon" software on its own website (www.chrysler.com, herein "the Chrysler website") that collects information about visits to that site ("data points" or "browser fingerprinting") and then shares that information with third-parties.[1]

Plaintiff acknowledges any information FCA US collected and shared relates solely to what a visitor does and views ***while visiting the Chrysler website***. Much of this information is simply the sort any website requires to deliver the content and pages requested by a visitor in a viewable format – *e.g.*, "routing" information (the IP address) for the visitor's computer, "browser type," "screen resolution," "installed fonts," and "system language."[2] Beyond this, Plaintiff just alleges FCA US "tracks" what a visitor does and views on its website – *i.e.*, what "vehicle models and trims," "pricing," "options," and "services" they look at.[3]

Nothing is pleaded about Plaintiff's own visit to the Chrysler website aside from the date of her visit ("August 24, 2025").[4] She does not allege that FCA US collected or shared any of her "personal data" ("such as name, telephone number, address or email address"), and seems to acknowledge it did not.[5] Nor does she describe anything she did or viewed on the website, much less anything that was even remotely sensitive or private. Instead, she just proffers a conclusory averment that what a visitor views on the website "***can*** reveal" (not "did reveal") "private facts

---

[1] *See*, *generally*, First Amended Class Action Complaint for: (1) Violation of the California Trap and Trace Law (Cal. Penal Code § 638.51); (2) Intrusion upon Seclusion, ECF #20 ("FAC"); *see also id.* at ¶¶ 1-3, 17-23.

[2] *See id.* at ¶¶ 18, 22.

[3] *See id.* at ¶ 19.

[4] *See id.* at ¶ 46.

[5] *See*, *generally*, FAC; *see also id.* at ¶ 25.

about her finances, purchasing intent, geographic location, as well as the needs of her household."[6] But, if this were the standard, simply observing anyone strolling a car dealer's lot would be an actionable "invasion" of their privacy. And, as the Ninth Circuit has confirmed, allegations of this sort do not suffice for Article III standing. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (affirming dismissal of similar claims for lack of standing, since "the monitoring of [plaintiff's] interactions with [defendant's] website" was no different than "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales").

Plaintiff's allegations fail to satisfy her burden to demonstrate standing, and come nowhere close to pleading any viable "trap and trace device" claim or invasion of privacy. For these reasons, and those discussed herein, dismissal is required.

## II. <u>BACKGROUND</u>

FCA US is an automobile manufacturer that owns, operates, and markets its vehicles on the Chrysler website. FAC, ¶ 17. The website "allows consumers to research specific vehicle models and trims, pricing, incentives, leasing or financing options, dealer selection, and related services." *Id.* at ¶ 19.

Plaintiff alleges she is a California resident who visited the Chrysler website on August 24, 2025. *Id.* at ¶¶ 14, 46. She pleads no facts at all about her visit, such as why she visited the site or what she did or viewed on it. *Id.* She does not allege she provided any of the information she refers to as "personal data" (*i.e.*, "name, telephone number, address or email address") to the website. *See*, *generally*, FAC; *see also id.* at ¶ 25. Nor does she allege that she provided any information about her finances during her visit. *Id.* There is no allegation FCA US ever received, or shared, any of her "personal" or financial information with anyone. *Id.*

---

[6] *Id.* at ¶ 19 (emphasis added).

Rather, Plaintiff alleges FCA US "embedded LiveRamp tracking software" (referred to in the FAC as a "Tracking Beacon") on the website, and "caused [this software] to run on Plaintiff's device and to capture and transmit Plaintiff's visitor-identifying dialing, routing, addressing, and signaling information to LiveRamp in real time." *Id.* at ¶¶ 3, 46. Plaintiff offers a list of "examples" of the types of "data points" and "browser fingerprinting" that "may" be collected by such software, such as "[d]evice type," "[b]rowser type and version," "[o]perating system and version," "[s]creen resolution and color depth," "language settings," "[t]ime zone settings," "[i]nstalled fonts," *etc.* *See id.* at ¶ 22; *see also id.* at ¶¶ 3, 21, 41.

The gist of Plaintiff's claims is that the software collects such "data points" as well as what she did during her "navigation of the pages of the Website" – details she says "can reveal private facts about her finances, purchasing intent, geographic location, as well as the needs of her household" – and then shares this information with LiveRamp. *See id.* at ¶¶ 19, 23, 38-39.

Plaintiff alleges she was harmed by this because the (limited) information about her visit to the Chrysler website "can be tied" to ***other "pre-existing"*** data LiveRamp maintains about her. *See id.* at ¶¶ 1, 43, 48 (emphasis added); *see also id.* at ¶¶ 1, 40, 60. According to Plaintiff, LiveRamp's pre-existing data and profile of her "may include" more specific information, such as her "name and postal address, email address, cookie IDs, and mobile device IDs." *Id.* at ¶ 43. Specifically, she claims she was injured because: (1) her "communications with the Website were converted into a linkable identity record"; (2) she "lost control over how the extracted visitor-identifying signals are used and disseminated"; and so (3) she could be "targeted" for unwanted advertising. *See id.* at ¶¶ 60-62. She further pleads her information has "value" to advertisers which was "diminished" in some way. *See id.* at ¶ 51. No facts are pleaded about any of this aside from an "information and belief" allegation that information regarding Plaintiff's viewing of the Chrysler website was either "added" to LiveRamp's already-existing profile of her "or used

… to create a new profile." *Id.* at ¶ 46. Nor does Plaintiff plead any facts to suggest that the information about her one visit to the Chrysler website was used to target her with any advertising, or that she received any advertising because of it. *See*, *generally*, FAC.

Based on the foregoing allegations, Plaintiff asserts two claims: violation of Cal. Penal Code § 638.51, which addresses "trap and trace devices" (Count I); and intrusion upon seclusion (Count II).

## III. ARGUMENT

### A. The Legal Standards.

FCA US moves to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Each carries its own legal standard.

*First*, a lack of jurisdiction requires dismissal under Rule 12(b)(1). *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Thus, Article III standing is a threshold question in every case, and "[a] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). "That a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured[.]" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 fn.20 (1976).

*Second*, to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 555 (citation omitted). A court will not accept as true conclusory legal allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

### B. Dismissal Under Rule 12(b)(1).

"[T]he 'irreducible constitutional minimum' of standing consists of three elements," which every plaintiff must demonstrate: (1) an injury in fact that is

"concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) fairly traceable to the challenged conduct of the defendant; (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff has failed to plead facts sufficient to establish her standing in two distinct ways.

***First***, Plaintiff has failed to plead facts demonstrating a concrete, actual, and non-hypothetical injury. As the Supreme Court explained in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), it is not sufficient to merely allege a violation of some statute, and "[o]nly those plaintiffs who have been ***concretely harmed*** by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original). Indeed, the necessity for Plaintiff to demonstrate a concrete injury is even clearer here, since the sole statutory claim she asserts is brought under the California Invasion of Privacy Act ("CIPA"), and that statute only allows private actions where the plaintiff "has been injured by a violation of this chapter." *See* Cal. Penal Code § 637.2.

Post-*TransUnion*, the Ninth Circuit has addressed purported injuries like those alleged here, and held they fail to show the concrete injury standing requires. In *Popa v. Microsoft*, 153 F.4th 784 (9th Cir. 2025), the plaintiff alleged she visited a pet supplies website, and that software captured data about her computer and browser, as well as all her "behavior on the website," and delivered this data to the software developer and the website owner. *Id.* at 786-87. The plaintiff sued both the software developer and the website owner for violation of Pennsylvania's wiretap statute (prohibiting the acquisition of "the contents of any wire, electronic or oral communication" through a device) and invasion of privacy. *Id.* at 787. But, the Ninth Circuit affirmed the dismissal of the plaintiff's claims, explaining:

> "Popa identifies no embarrassing, invasive, or otherwise private information collected by [the software]. Indeed, the monitoring of Popa's interactions with PSP's website seems most similar to a store

> clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales … This is quite different from the hypotheticals set out in the Restatement … [for] intrusion upon seclusion … Popa alleges that [the software] gathered her pet-store preference and her street name. To the extent Microsoft's tracking software ***could*** be offensive in particular circumstances (e.g., involving sensitive medical or financial information), Popa does not plausibly allege the infringement of any such privacy interest … Popa's broad theory that the common law protected privacy rights—pitched at a high level of generality—does not align with the analysis adopted in *TransUnion* … In short, there existed no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms. And … Popa has not identified a harm that she experienced that is remotely similar to those protected by these torts."

*Id.* at 791-92 (emphasis in original). The Ninth Circuit then proceeded to distinguish prior cases – such as *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), which involved allegations Facebook tracked users' browsing on other websites even "after they had logged off the social media platform" – explaining those cases relied on an analysis that "finds no support in *TransUnion*," and stressing that each plaintiff's standing turns on the sensitivity of the specific information collected by the defendant. *See Popa*, 153 F.4th at 793-94.

Here, Plaintiff's claims and purported injuries are based on allegations FCA US collected and shared what she did and viewed on FCA US's own website, as well as generalized data about things like her "browser type" and IP address. *See, e.g.*, FAC, ¶¶ 19, 22-23. The Ninth Circuit's analysis in *Popa* confirms none of this implicates any protectable privacy interest, and a host of courts have found standing lacking under similar allegations. *See, e.g.*, *Magliocca v. United Healthcare Servs.,*

*Inc.*, 2026 WL 878694, *4 (E.D. Cal. Mar. 31, 2026) ("The information plaintiff alleges was collected by the trackers here – button clicks, page visits, scrolls, session lengths, URLs, and IP addresses, apparently collected after one visit to the UHC website in July 2025 – resembles exactly the kind of 'non-sensitive browsing activity on a single website' that courts have repeatedly found insufficient to establish a concrete injury." (quotation omitted)); *Sisti v. Bosley Inc.*, – F.Supp.3d – , 2026 WL 1223927, **1, 3-5 (C.D. Cal. Apr. 27, 2026) (no standing for claim that defendant used "tracking pixels embedded on its website" to collect fact of plaintiff's visit to defendant's website, and then shared "'identifiers' that enabled Meta and TikTok to identify him"); *Wooten v. BioLife Plasma Servs. L.P.*, 807 F.Supp.3d 1139, 1145 (E.D. Cal. 2025) (no concrete injury where "plaintiffs allege a one-time collection of their IP and email addresses" by defendant, "but they do not allege that the third-party trackers collected any other 'embarrassing, invasive, or otherwise private information'" (quotation omitted)); *Mitchener v. CuriosityStream, Inc.*, 815 F.Supp.3d 845, 850-51 (N.D. Cal. 2025) ("The mere 'collection of basic contact information by … software[,] or where the plaintiffs merely visited the website[,] are not concrete harms." (alterations in original, quotation omitted)); *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1086 (C.D. Cal. 2021) (dismissing for lack of standing because "courts have been less willing to find that users have a cognizable privacy interest in browsing data collected only while users interact with the website of the defendant company").

Even beyond this, the entirely speculative nature of the injuries Plaintiff posits further undercuts any notion of a non-hypothetical, concrete injury. Essentially, she just avers the innocuous data FCA US collected and shared about her one visit to the Chrysler website "can be tied" to other "pre-existing" data LiveRamp may have already collected about her from other sources, that this creates a "risk" her data will be used or sold, and that this could "enabl[e]" LiveRamp or other third parties to "inundate" her with "targeted marketing and [the] possible sale of [her] data." *See*

FAC, ¶¶ 60-62. Yet, Plaintiff pleads no facts to support this speculative chain of assumptions her purported injury is based on. Indeed, she offers only a generic "information and belief" allegation that LiveRamp either "added Plaintiff's data to its profiles … or used the data to create a new profile." *Id.* at ¶ 46. And, she does not allege that, since visiting the Chrysler site, she has been "targeted" with any advertising. *See*, *generally*, FAC. Courts agree such allegations fail to plead any actual, non-hypothetical injury. *See, e.g.*, *Wooten*, 807 F.Supp.3d at 1145 (finding no "***actual*** injury" had been pleaded where plaintiffs alleged website trackers "could … result in targeted advertising," but plaintiffs did not "allege that they were subject to any such targeted advertising" (emphasis in original)); *see also Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, *6 (S.D. Cal. Feb. 23, 2026) (holding "a speculative future risk of identity theft and digital profiling" insufficient).

***Second***, Plaintiff has also failed to plead facts to support the traceability that Article III standing requires. Plaintiff devotes much of the FAC to allegations about LiveRamp, the "pre-existing data" it may or may not have collected about her from other sources, and its ability to assemble "comprehensive 'cradle to grave' profiles" of consumers by drawing on a multitude of different sources for targeted advertising. *See, e.g.*, FAC, ¶¶ 42-43, 48, 50, 61. Presumably, this focus on LiveRamp is part of an effort to sidestep the Ninth Circuit's decision in *Popa*, and suggest this case is more like *In re Facebook*, where the court (pre-*TransUnion*) found standing for claims against Facebook based on its comprehensive tracking of users' browsing activities on other websites, and its use of that data to create "cradle-to-grave profile[s] without users' consent." *See* 956 F.3d at 599.[7]

But, Plaintiff's claims in this case are asserted against ***FCA US***, and based on its collection and sharing of information about her ***one*** visit to the Chrysler website.

---

[7] As noted above, *In re Facebook* predated *TransUnion* and applied a now-outdated standard for standing. *See Popa*, 153 F.4th at 794-95 (distinguishing *In re Facebook* on the specific facts of that case and noting the court "might analyze [the statute its finding of standing was based on] different today, especially after the Supreme Court's decision in *TransUnion*").

There are no facts pleaded to suggest FCA US ever collected or shared any other information about Plaintiff, or that FCA US ever created any profile of her or other consumers. *See*, *generally*, FAC. And, critically, there are no facts pleaded to even suggest the extremely limited information FCA US allegedly shared with LiveRamp – details about Plaintiff's single visit to a website – did, or even could, meaningfully contribute to any profile LiveRamp may have assembled about Plaintiff. *See*, *generally*, FAC. This is fatal, since traceability cannot exist where "[p]laintiff's theory of causation is too speculative and tenuous." *G.B. by and through G. P. v. EPA*, 172 F.4th 1042, 1058 (9th Cir. 2026).

Because Plaintiff has failed to plead facts sufficient to establish any concrete injury or traceability, she lacks standing and dismissal is required.

### C. Dismissal Under Rule 12(b)(6).

#### *1. The "Trap And Trace" Claim Fails (Count I).*

In Count I, Plaintiff asserts a CIPA claim under Cal. Penal Code § 638.51 based on allegations the "Tracking Beacon" software used on the Chrysler website constitutes an illegal "trap and trace device." *See* FAC, ¶¶ 75-89. Under this statute, a "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). The statute contains various exceptions, including "if the consent of the user of that service has been obtained." Cal. Penal Code § 638.51(b). Plaintiff's claim fails for several independent reasons.

***First***, and at the most basic level, Plaintiff's claim fails because the statutory definition of "trap and trace device" does ***not*** include devices or processes that record or capture "the contents of a communication." *See* Cal. Penal Code § 638.50(c). "For purposes of § 638.51, 'trap and trace devices' by definition are tools which provide information about the 'who,' 'when,' and 'where' of communications—but

not the 'what.'" *Mitchener*, 815 F.Supp.3d at 850 (quoting *Price v. Headspace, Inc.*, 2025 WL 1237977, *3 (Cal. Super. Ct. Apr. 1, 2025)); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, *4 (N.D. Cal. June 24, 2025) (similar); *see also Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007) (no "pen register or trap and trace device" was implicated in court order since the order "requires the production of the contents of communications").

Indeed, as Plaintiff notes in the FAC, the definition of "trap and trace device" in the CIPA is derived from that in the federal Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 3127(3) and (4), which likewise exclude any devices that can capture "the contents of any communication" from its definitions of both pen registers and a trap and trace devices. *See* FAC, ¶ 35. And, courts applying that same statutory language agree no such devices are involved if they can capture the contents of internet browsing. *See, e.g.*, *United States v. Soybel*, 13 F.4th 584, 593 (7th Cir. 2021) ("any intrusion on these interests is minimized by the fact that the government did not – and under the Pen Register Act, could not – intercept the content of the communications").

Here, Plaintiff acknowledges the statutory definition excludes devices that can capture "contents." *See* FAC, ¶ 76. Yet, she predicates her claims on the notion that such contents and her "browsing activity" on the website were captured, and that the details of what she viewed "can reveal private facts about her finances, purchasing intent … as well as the needs of her household." *Id.* at ¶¶ 19, 62. There is no dispute this constitutes the "contents" of a communication under the CIPA. *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1051-52 (S.D. Cal. 2023). Because Plaintiff alleges the installed software can capture the "what" (*i.e.*, the content of her communication with the Chrysler website), it cannot constitute a trap and trace device as a matter of law, and Count I should be dismissed.

***Second,*** even if the software on the website operated differently than Plaintiff alleges, and it could not capture "contents," Plaintiff's CIPA claim would still be

barred because FCA US consented to the use of the software on its website.

As Plaintiff acknowledges, many of the CIPA's provisions regarding a "trap and trace device" were modeled on the federal ECPA. *See, e.g.*, FAC, ¶¶ 31, 34-37. While some other provisions of both the CIPA and the ECPA require that consent be obtained from "all parties" to a communication, the permission required for any trap and trace device is different – and essentially identical under both statutes:

> "A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes …
> (5) ***If the consent of the user of that service has been obtained***."

Cal. Penal Code § 638.51(b) (emphasis added).

> "The prohibition of subsection (a) does not apply with respect to the use of a pen register or trap and trace device by a provider of electronic or wire communication service …***where the consent of the user of that service has been obtained***."

18 U.S.C. § 3121(b) (emphasis added).

The use of the singular "user" is no mistake. After all, if the consent of "all parties" was required before installing such a device, "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Entm't*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting 18 U.S.C. § 3121(b)). And, in the context of websites, courts have consistently held that it is the ***website operator*** – not the website visitor – who is the "user" of software on the website, and the party whose consent is required. *See, e.g.*, *In re Doubleclick Inc. Privacy Litig.*, 154 F.Supp.2d 497, 507-10, 519 (S.D.N.Y. 2001) ("[defendant]-affiliated Web sites are 'parties to the communications" and "consent[ed] to [defendant's] interceptions"); *see also Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263, 1270 (N.D. Cal. 2001) (Amazon was not a "provider," but rather the "user" of electronic communication services); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F.Supp.2d 299, 309 (E.D.N.Y. 2005) ("Websites … [are] 'users' of the 'electronic

communication service' of Internet access.").

The legislative history of § 638.51 further confirms it cannot be read to prohibit installing a tracking device or process on a party's own line or website. Indeed, the hearings on adoption of the law (whose purpose was "to authorize state and local law enforcement to seek emergency orders for pen registers/trap and trace devices used in telephone surveillance") explained that pen "registers/trap and trace devices are used by law enforcement for telephone surveillance to record incoming and outgoing phone numbers from a tapped line." 2015 California Assembly Bill No. 929, California 2015-2016 Regular Session (Hearing, Assembly Committee on Privacy and Consumer Protection April 21, 2015). As a matter of common sense, a person cannot "tap" their own line or device.[8]

This is ***not*** a case where Plaintiff is alleging FCA US installed software that monitored her browsing activity on ***other*** websites – just that FCA US obtained information about what Plaintiff did on its ***own*** website. *See*, *generally*, FAC. Nothing in the CIPA prohibits this, and the consent provision in Cal. Penal Code § 638.51(b)(5) expressly precludes any possible violation from it. Indeed, California courts have recognized the absurdity of reading CIPA in the way Plaintiff proposes, effectively criminalizing all internet websites. As one court aptly explained:

> "Plaintiff makes no allegation … that Defendant's website puts any sort of wiretap or tracker on Plaintiff that allows Defendant to monitor who else contacts Plaintiff …. The statute prohibits receiving unauthorized information about incoming communications from ***other parties—not information that passes between plaintiff and defendant when***

[8]Indeed, cases allowing § 638.51 trap and trace claims to proceed typically involve lawsuits against ***the third-party*** tracking the information and ***not*** the operator of the website where the pixels were installed. *See, e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, **3, 11-12 (N.D. Cal. July 18, 2025) (allowing § 638.51 claim against a data broker that installed cookies and pixels on CVS website); *In re Meta Pixel Tax Filing Cases*, 2025 WL 2243615, **1, 3 (N.D. Cal. Aug, 6, 2025) (allowing § 638.51 claim against Meta for installing pixels on tax preparer websites).

> ***plaintiff contacts the defendant.*** CIPA cannot reasonably be read as broadly as Plaintiff attempts to read it. Plaintiff's reading goes far afield from any concept of wiretapping. If CIPA broadly prohibits any process by which anyone identifies any 'originating number,' then every cell phone in the world—which identify the phone number of incoming calls—would be a prohibited trap and trace device. So would every website interaction that identifies electronic information about the user in a manner that allows the website to function."

*Heiting v. HP Inc.*, 2025 Cal. Super. LEXIS 60774, **7, 9 (Cal. Super. Ct. Aug. 1, 2025) (emphasis added); *see also U.S. v. Forrester*, 512 F.3d 500, 503, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in … the IP addresses of the websites they visit … IP addresses … are voluntarily turned over in order to direct the third party's servers."); *Aviles v. Liveramp, Inc.*, 2025 Cal. Super. LEXIS 776, *7 (Cal. Super. Ct. Jan. 28, 2025) ("Plaintiff has not alleged anything above and beyond how the internet normally works."); *Licea v. Hickory Farms LLC*, 2024 Cal. Super. LEXIS 66498, **9-10 (Cal. Super. Ct. Mar. 13, 2024) (holding that similar allegations failed to plead a lack of consent, and further noting that "public policy strongly disputes Plaintiff's potential interpretation … as one rendering every single entity voluntarily visited by a potential plaintiff, thereby [obtaining] an IP address for purposes of connecting the website, as a violator").

***Third,*** Plaintiff's CIPA claim also fails because, as a growing number of California courts have held, that statute does not apply to internet browsing or communications. *See, e.g.*, *Schallert v. Palo Alto Networks*, 2026 Cal. Super. LEXIS 24039, *5 (Cal. Super. Ct. Mar. 6, 2026) ("Because the court finds that the CIPA does not extend to website communications, the court finds that Plaintiff has not met their burden to state facts sufficient to constitute a cause of action"); *Cammorata*, 2026 Cal. Super. LEXIS 17831, **3-4 ("The Legislature enacted this statute in 1967—the internet did not exist then … [and] the Court is not aware of any binding

legal authority that extends the application of CIPA to the internet."); *Schallert v. Orkin LLC*, 2025 Cal. Super. LEXIS 85120, **6-17 (Cal. Super. Ct. Dec. 15, 2025) (analyzing statutory framework and legislative history in detail, and concluding that neither supported applying CIPA to website communications); *Sanchez v. Cars.com Inc.*, 2025 Cal. Super. LEXIS 710, **5-9 (Cal. Super. Ct. Jan. 27, 2025) (rejecting extension of CIPA's pen register provision to internet communications based on the statute's "plain language and legislative intent"); *Scharon v. Paramount Glob.*, 2025 Cal. Super. LEXIS 60786, **3-6 (Cal. Super. Ct. Oct. 3, 2025) (similar); *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 Cal. Super. LEXIS 84257, *8 (Cal. Super. Ct. Dec. 10, 2025) ("CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software.").

This interpretation is consistent with the statutory language that limits pen register and trap and trace violations to when a device is employed without either the user's consent or a court order "pursuant to Section § 638.52 or 638.53." *See* Cal. Penal Code § 638.51(a). The statute requires the court order to "specify … [t]he number and, if known, physical location of the ***telephone line*** to which the pen register or trap and trace device is to be attached." *Id.* at § 638.52(d)(3) (emphasis added); *see also* § 638.53(a)(1) (requiring compliance with § 638.52). But, obviously, this express statutory requirement would make no sense if pen registers and trap and trace devices encompassed things like internet browsing and websites.

The California Supreme Court instructs that when interpreting statutory provisions, "each sentence must be read not in isolation but in the light of the statutory scheme," so "[a]n interpretation that renders related provisions nugatory must be avoided." *Lakin v. Watkins Associated Indus.*, 6 Cal.4th 644, 659 (1993). Thus, when interpreting the rules and requirements for trap and trace devices in § 638.50(c), courts cannot ignore the clarifying language and additional requirements in § 638.51(a) and § 638.52(d)(3). The only way to read the statute in a way that

gives meaning to each part is to understand that "trap and trace device" has the same meaning now that it had for decades, and refers to devices applied to telephone lines – not the basic workings of the internet.

***Fourth***, and finally, to the extent the Court finds the language or scope of the CIPA to be ambiguous, it should apply the rule of lenity, and favor the interpretation that more narrowly applies and find no liability. California courts apply this rule where a criminal statute is being invoked, even if that invocation is made in a civil action. *See, e.g.*, *Harrott v. County of Kings*, 25 Cal.4th 1138, 1154 (2001); *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, *1 (N.D. Cal. Oct. 17, 2025). That numerous California courts have found the activities alleged here do not constitute a trap and trace violation for the reasons above confirms, at a minimum, that the statute certainly can (and should) be interpreted to find no violation here. *See, e.g.*, *Aviles*, 2025 Cal. Super. LEXIS 776, at *6; *Licea*, 2024 Cal. Super. LEXIS 66498, at *10.

For all these reasons, Plaintiff's "trap and trace device" CIPA claim in Count I should be dismissed.

***2. The Intrusion Upon Seclusion Claim Fails (Count II).***

In Count II, Plaintiff asserts a claim for intrusion upon seclusion based on the notion that FCA US "intentionally intruded into a private conversation or matter Plaintiff … [was] involved in – namely [her] visit to the Website." *See* FAC, ¶ 93; *see also id.* at ¶¶ 90-99. Such a claim requires: (1) "the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and (2) "the intrusion must occur in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009). Plaintiff fails to even remotely plead either element.

***First,*** Plaintiff cannot state any claim because it is axiomatic that "parties to a conversation cannot eavesdrop on their own conversations." *Garcia v. Build.com, Inc.*, 2023 WL 4535531, *5 (S.D. Cal. July 13, 2023); *see also Williams v. What If*

*Holdings, LLC*, 2022 WL 17869275, *2 (N.D. Cal. Dec. 22, 2022) (same). And, obviously, when a visitor connects with a website, "the website owner is a party to the communication." *Heerde v. Learfield Commc'ns, LLC*, 741 F.Supp.3d 849, 860 (C.D. Cal. 2024); *see also Licea v. Am. Eagle Outfitters, Inc.*, 659 F.Supp.3d 1072, 1081-82 (C.D. Cal. 2023) (dismissing claim because operator of a website was "a party" to website communications, and "cannot eavesdrop on its own conversation"). Thus, Plaintiff cannot bring any intrusion upon seclusion claim based on allegations FCA US "intruded into a private conversation" with its own website, and Count II should be dismissed on this basis.

***Second,*** it is well established that website visitors do not have a reasonable expectation of privacy in their "browsing and using Defendant's public website." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, **1-6 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025); *see also Myers v. Dick's Sporting Goods, Inc.*, 2026 WL 1045528, *3 (E.D. Cal. Apr. 17, 2026) (explaining "there is no reasonable expectation of privacy in one's IP address" and "what products Plaintiffs view on a sporting goods website … is not sensitive or private"); *Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 524-25 (C.D.Cal. 2021) (agreeing with defendants that plaintiff did not have "a reasonable expectation of privacy over his activity on Nike's Website"). Thus, the type of information Plaintiff alleges was collected is not anything she could reasonably have expected was private, and her claim fails.

***Third,*** Plaintiff's claim also fails because she has not pleaded any "highly offensive" intrusion. "The California Constitution and the common law set a high bar for an invasion of privacy claim," and a defendant's collection and disclosure of information about a plaintiff's visit to its own website does not meet this high bar. *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1024-25 (N.D. Cal. July 12, 2012); *see also Esparza v. Kohl's, Inc.*, 723 F.Supp.3d 934, 946-47 (S.D. Cal. 2024) ("The fact that ASI's software allegedly captured, among other things, Plaintiff's 'personal details' and 'browsing history,' … and IP address … is insufficient to demonstrate

that Defendant's conduct constituted a serious invasion of a protected privacy interest"); *In re Google, Inc. Privacy Policy Litig.*, 58 F.Supp.3d 968, 973-75, 988 (N.D. Cal. 2014) (collecting and sharing such information does not meet the "'high bar' for the requisite 'intrusion that is highly offensive to a reasonable person'"); *see also Jones v. Peloton Interactive, Inc.*, 720 F.Supp.3d 940, 951 (S.D. Cal. 2024) (dismissing claim because "[t]he collection of users['] information concerning various fitness products and services shared on the chat does not rise to the level of 'an egregious breach of social norms'").

Rather, this requirement is only satisfied if something truly out of the ordinary is alleged, such as with internet trackers (entirely different than those alleged here) that continue to monitor and report users' browsing activities ***after*** they had left the defendant's website, or that collect then disclose sensitive health information. *See, e.g.*, *In re Facebook*, 956 F.3d at 598, 602 (finding allegations stated a claim where "Facebook continued to collect their data ***after they had logged off*** the social media platform" (emphasis added)); *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1127 (S.D. Cal. 2023) (dismissing claims based on sharing of plaintiff's browsing activity on site, but allowing separate claims about the disclosure of private health information from appointment scheduling page to proceed).

Accordingly, the intrusion upon seclusion claim should be dismissed.

## IV. CONCLUSION

For the reasons above, the Court should dismiss the Complaint.

Dated: May 15, 2026

**KLEIN THOMAS LEE & FRESARD**

By: /s/ *Kristyn Wong*
Kristyn Wong (346644)
Thomas L. Azar (*Admitted pro hac vice*)
Sarah K. Molina (*Admitted pro hac vice*)

*Attorneys for Defendant FCA US LLC*

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on **May 15, 2026**, a true and correct copy of the foregoing **FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** was filed with the Clerk using the CM/ECF system, which will provide notice to the following counsel of record:

Robert Tauler (SBN 241964)
J. Evan Shapiro (SBN 218481)
**TAULER SMITH LLP**
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017

Attorneys for Plaintiff
WENDY BLALOCK

Tel: (213) 927-9270
Fax: (949) 706-6469
Email: rtauler@taulersmith.com
eshapiro@taulersmith.com



Samie Long