Robert Tauler (SBN 241964)
robert@taulersmith.com
J. Evan Shapiro (SBN 218481)
eshapiro@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff Wendy Blalock*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WENDY BLALOCK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 8:26-CV-00201-DMG-KES<br><br>*[Assigned to Hon. U.S.D.J. Dolly M. Gee]*<br><br>**PLAINTIFF WENDY BLALOCK'S OPPOSITION TO DEFENDANT FCA US, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>Hearing</u><br>Date: July 17, 2026<br>Time: 9:30 a.m.<br>Courtroom: 8C<br><br>Action Filed: January 26, 2026 |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ 3

I. INTRODUCTION ........ 6

II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ........ 8

III. RELEVANT LEGAL STANDARDS ........ 11

IV. THE COURT SHOULD DENY THE MOTION TO DISMISS ........ 12

A. Plaintiff Has Article III Standing to Bring HER Claims. ........ 12

B. The FAC Sufficiently States Claims Against Chrysler ........ 17

1. The Tracking Beacon is a Trap and Trace Device. ........ 17

a. Cal. Penal Code §§ 638.50-51 Apply to Software & Websites ........ 17

b. The FAC Does Not Allege that the Tracking Beacon Collected the "Contents of a Communication"; Additionally Such Transfers Would Not Defeat Plaintiff's § 638.51 Claim ........ 19

2. The Consent Exemption of § 638.51(b)(5) Does Not Apply Here ........ 20

3. The FAC States a Claim For Intrusion Upon Seclusion. ........ 21

V. CONCLUSION ........ 23

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ........ 24

# TABLE OF AUTHORITIES

Cases

*Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908 (C.D. Cal. Mar. 25, 2026) .... 13, 16

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) .... 12

*Biglang-Awa-Castro v. SBE Restaurant Group, LLC*, 25VECV03590, 2026 Cal. Super. LEXIS 25177 (L.A. Co. Super. Ct. Apr. 16, 2026) .... 17

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .... 13

*Caldwell v. InMobi Pte., Ltd.*, No. 25-cv-09977-AMO, 2026 LX 229530 (N.D. Cal. Apr. 29, 2026) .... 22

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016) .... 12

*Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025) .... 14, 15, 21

*Casillas v. Lucky Opco LLC,* 25STCV03961, 2026 Cal. Super. LEXIS 24132 (L.A. Co. Super. Ct. Jan. 5, 2026) .... 17, 21

*Casillas v. Six Flags Ent. Corp*., 812 F. Supp. 3d 1016 (C.D. Cal. 2025) .... 14, 17, 22, 23

*Casillas v. Transitions Optical, Inc.*, 2024 Cal. Super. LEXIS 68029 (Super. Ct. L.A. Co. Apr. 23, 2024) .... 21

*Conohan v. Rad* Power *Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .... 18

*De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 LX 591947 (N.D. Cal. Dec. 22, 2025) .... 14

*Deivaprakash v. Conde Nast Digit.*, No. 25-CV-04021-RFL, 2025 U.S. Dist. LEXIS 193968 (N.D. Cal. Sept. 30, 2025) .... 14, 19

*Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 LX 187347 (N.D. Cal. Apr. 21, 2026) .... 13, 18

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) .... 12

*Est. of Dominguez v. Estes Express Lines, Inc.*, No. 2:25-cv-10514-DSF-MAR, 2026 LX 314584 (C.D. Cal. June 24, 2026) .... 21

*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276 (N.D. Cal. Aug. 29, 2025) .... 11

*Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) .... 18, 21

*Garcia v. Anschutz Ent. Grp., Inc*., No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782 (C.D. Cal. May 5, 2026) .... 13, 15, 16

*Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sep. 2, 2025) .. 18

*Haleon US*, 2025 U.S. Dist. LEXIS 169503 .......... 13

*Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 LX 11956 (N.D. Cal. Jan. 29, 2026) .......... 13, 16

*Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) .......... 18

*In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589 (9th Cir. 2020) .......... 13, 14

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 22

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3rd Cir. 2019) .......... 15

*In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147 (N.D. Cal. 2025) .......... 20

*Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303 (S.D. Cal. Mar. 12, 2026) .......... 13, 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .......... 12

*Krzyzek v. Openx Techs., Inc.*, No. 25-CV-5588-SI, 2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026) .......... 13, 15, 16, 22

*Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675 (C.D. Cal. Dec. 4, 2025) .......... 17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 12

*Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 18, 21

*Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. July 25, 2024) .......... 18, 21

*Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017) .......... 15

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) .......... 12

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744 (N.D. Cal. Nov. 24, 2025) .......... 14, 15

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. Aug. 25, 2025) .......... 13, 14, 15

*Price v. Headspace, Inc.*, 2025 Cal. Super. LEXIS 27951 (L.A. Super Ct. Apr. 1, 2025) .......... 18

*Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. July 18, 2025) .......... 18

*Sanchez v. Glasscanopy, Inc.*, 2025 Cal. Super. LEXIS 18460 (L.A. Super. Ct. Feb. 28, 2025) .......... 18, 21

*Sanchez v. Weber-Stephen Prods. LLC*, 2024 Cal. Super. LEXIS 72373 (Super. Ct. L.A. Co. June 4, 2024) .......... 21

*Santoro v. Lulu & Georgia, Inc.*, 25STCV11722, 2025 Cal. Super. LEXIS 84529 (L.A. Co. Super. Ct. Nov. 21, 2025) .......... 18

*Scarlett v. Future US, LLC*, CGC-25-621912, 2025 Cal. Super. LEXIS 56166 (S.F. Co. Super. Ct. Sept. 5, 2025) .......... 18

*Schallert v. RocketGenius*, 25STCV35081, 2026 Cal. Super. LEXIS 25177 (L.A. Co. Super. Ct. March 24, 2026) .......... 17

*Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 LX 445234 (N.D. Cal. Oct. 16, 2025) .......... 22

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. October 21, 2024) .......... 18

*Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) .......... 13, 15, 18, 20

*Smith v. LoanMe*, 11 Ca.5th 183 (2021) .......... 19

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 12

*U.S. Dep't of Justice v. Reporters Committee,* 489 U.S. 749 (1989) .......... 16

*Valenzuela v. Intersystems Corp.*, 2025 Cal. Super. LEXIS 42550 (Orange Co. Superior Ct. Aug. 4, 2025) .......... 18

*Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .......... 14, 15

*Wolf v. Strankman*, 392 F.3d 358 (9th Cir. 2004) .......... 11

*Zamani v. Carnes*, 491 F.3d 990 (9th Cir. 2007) .......... 21

*Zhizhi Xu v. Reuters News & Media, Inc.*, 25CV459918, 2025 Cal. Super. LEXIS 76169 (Santa Clara Co. Super Ct. Oct. 24, 2025) .......... 18

Statutes

Cal. Penal Code § 629.51(a)(2) .......... 11

Cal. Penal Code § 638.50(c) .......... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Wendy Blalock ("Plaintiff") opposes Defendant FAC US LLC's ("Chrysler" or "Defendant") Motion to Dismiss the First Amended Complaint (ECF No. 25) (the "Motion"). The FAC (ECF No. 20) alleges that Chrysler uses the tracking software of a California-registered data broker LiveRamp (the "Tracking Beacon") on its website, located at https://www.chrysler.com (the "Website"). The software is designed to use many data points about the device and browser of a visitor visitor to the Website, as well as information about the visitor's geolocation and webpage visits, to identify her. This identification aids Chrysler in identifying targets for specific advertising and benefits data broker LiveRamp by providing it with data to build or enhance profiles on visitors to the Website. Additionally, once identified, a visitor is tracked by LiveRamp whenever she visits any website deploying the Tracking Beacon on the Chrysler site. All of this occurs without Chrysler providing the visitor with any opportunity to reject such identification and tracking. Plaintiff asserts that the Website's deployment of the Tracking Beacon violates California Penal Code §§ 638.50-51 (California's "Trap and Trace Law"), a provision of the California Invasion of Privacy Act, Pen. Code §§ 630 *et seq.* ("CIPA").

The Motion is largely based upon misrepresentations about Plaintiff's allegations and a lack of understanding of Plaintiff's statutory cause of action under §§ 638.50-51. Chrysler asserts that it is alleged to have shared "extremely limited information" with LiveRamp (Mem. of Ps. & A.s in Support of Motion (ECF No. 25) ("Mot."), at 9:3-7, when in fact the FAC alleges that the Tracking Beacon allows LiveRamp to receive hundreds of data points that are used to identify visitors to Chrysler's Website. Chrysler also misrepresents the FAC when it asserts that "[t]his is not a case where Plaintiff is alleging [Chrysler] installed software that monitored her browsing activity on other websites – just that [Chrysler] obtained information about what Plaintiff did on its own website." Mot., at 12:12-14 (citing the FAC "generally"). In fact, the FAC specifically alleges that, "[o]n information and belief, LiveRamp added Plaintiff's data to its profile(s) of Plaintiff, or used

the data to create a new profile of Plaintiff; in turn, this enabled **ongoing tracking of Plaintiff's browsing onto *different websites*.**" ECF No. 20, at 15:13-15; *see also* ¶ 43 (describing the Tracking Beacon generally). Counter to Chrysler's assertions, the FAC plainly alleges that the Tracking Beacon operated to its fullest extent on Plaintiff. Moreover, the focus of the Trap and Trace Law is the *identification* of a person or device (here both) as the source of an electronic or wire communication – and not, as Chrysler tells the Court, the collection of "personal" or financial information.

Plaintiff has identified concrete injuries resulting from Chrysler's deployment of the Tracking Beacon. It includes loss of control over data that LiveRamp uses (and which others can use) to identify her, and which is collected on an ongoing basis by the LiveRamp tracking process. A growing number of district judges in the Northern, Central and Southern Districts of California have, applying a Ninth Circuit and/or a U.S. Supreme Court precedent, found that an individual's loss of control over data that can identify the individual and can be used in connection with a pervasive profiling and tracking ecosystem, represents a concrete injury in fact establishing Article III standing in website software data privacy cases such as this.

Plaintiff has stated a claim for violation of Cal. Penal Code § 638.51(a). Chrysler's contention that the relevant statutes only cover telephone technology have been soundly rejected by a majority of federal district courts and many California state courts. Its claim that the Tracking Beacon is not actionable because it collects "the contents of a communication" clashes with the actual allegations of the FAC, and contradicts a number of well-reasoned, persuasive decisions. Further, Chrysler fails to demonstrate that it is a provider of an electronic or wire communication service such that it is eligible for exemption from § 638.51(a) based on the giving of "consent" by "the user." In any event, Chrysler would not be deemed to be the "user" of the website or the Tracking Beacon under the circumstances of this case.

Chrysler's contentions regarding Plaintiff's claim for intrusion upon seclusion are equally unavailing.

For these reasons, and those set forth below, the Court should deny the Motion in its entirety.

## II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The FAC alleges that Chrysler operates a highly interactive commercial website selling vehicles and related services to consumers (the "Website"). FAC (ECF No. 20), ¶¶ 2, 8-9, 19. The Website deploys the Tracking Beacon, which is software provided by data broker LiveRamp. *Id.*, ¶ 3. It further alleges that the Tracking Beacon was in operation when Plaintiff visited the Website from a physical location in California, on August 24, 2025. *Id.*, ¶ 12, 46. Plaintiff had no knowledge of, and did not consent to, the operation of the Tracking Beacon on her and her device; nor had Chrysler obtained a court order or any other authorization to use the Tracking Beacon at the time. *See id.*, ¶¶ 6, 47, 60, 62, 85-86.

The FAC further alleges that during her visit, Plaintiff reasonably expected that her interaction with the Website would occur between her device and Chrysler; she did not expect that information generated through the interaction would be disclosed to unrelated third parties. *Id.*, ¶¶ 61-62, 92-95. However, as Plaintiff's browser requested and loaded webpages on the Website, and unknown to Plaintiff, the Tracking Beacon caused the URLs of webpages Plaintiff visited on the Website, along with information about her, her location, her browser and her device that can be used to identify her, to be transmitted to LiveRamp. *Id.*, ¶¶ 38-46. The FAC explains that the Tracking Beacon identifies individuals through browser fingerprinting – a process by which hundreds of technical data points about an individual's device and browser are transmitted to a data broker such as LiveRamp. As the FAC makes clear, the transmission of such data points has ***nothing to do with the operation of the Website***, because third parties such as LiveRamp are "not involved in the operation of [a] website visited, or the rendering of [a] website's contents on the screens of visitors." *Id.*, ¶¶ 21-23.

Further, the Tracking Beacon that acted upon Plaintiff includes the assignment of a permanent LiveRamp "RampID" aimed at "persistently track[ing] an individual across

thousands of websites." *Id.*, ¶ 43. (These are placed on the individual visitor's browser. *Id.*) "The RampID, and the data associated with it, is widely shared [by LiveRamp] with dozens of ad tech partners so that all parties who pay for it can identify the user, and see the user's online habits." *Id.*

LiveRamp's identification of Website visitors including Plaintiff "works across devices; in other words, the Tracking Beacon can inform websites using it that the same account or person has accessed the website from different devices." *Id.*, ¶ 44 (referencing LiveRamp's own statements about its software's capabilities). Further, the FAC explains that as a result of the identification and tracking process initiated by Chrysler's use of the Tracking Beacon, LiveRamp was enabled to build or enhance its profile of Plaintiff, and members of the putative Class in this action, "and to track their future internet browsing in ways that would be highly offensive to a reasonable person." *Id.*, ¶ 45.

Paragraph 46 of the FAC makes clear that Plaintiff has alleged that the various functions of the Tracking Beacon explained in general terms in the pleading operated upon her. It alleges that:

> During Plaintiff's visit to the Website on August 24, 2025, Defendant caused the Tracking Beacon to run on Plaintiff's device and to capture and transmit Plaintiff's visitor-identifying dialing, routing, addressing, and signaling information to LiveRamp in real time. On information and belief, LiveRamp added Plaintiff's data to its profile(s) of Plaintiff, or used the data to create a new profile of Plaintiff; in turn, this enabled ongoing tracking of Plaintiff's browsing onto different websites.

*Id.*, ¶ 45.

The FAC alleges that the identification and ongoing tracking of Website visitors including Plaintiff benefitted Chrysler, by facilitating the targeting of specific individuals for Chrysler marketing. *Id.*, ¶¶ 1, 5, 50, 62. It also alleges that LiveRamp profits from these activities because they enhance LiveRamp's profiles on the visitors, which it is free

to market and sell. *Id.*, ¶¶ 3, 12, 56, 62.

The FAC alleges that, as the result of being subjected to the Tracking Beacon on the Website, Plaintiff sustained numerous injuries:

> Plaintiff's communications with the Website were converted into a linkable identity record without Plaintiff's consent; Plaintiff lost control over how the extracted visitor-identifying signals are used and disseminated; and Plaintiff faces an ongoing risk that this unlawfully created identity linkage will be repurposed, shared, or sold within the data-broker ecosystem for uses far removed from Plaintiff's purpose in visiting the Website.

*Id.*, ¶ 60. Moreover, the FAC alleges that the economic value of data that can identify and characterize Plaintiff, her attributes and her interests "was diminished by Defendant's deploying of the Tracking [Beacon] on the Website." *Id.*, ¶¶ 51, 54. "Defendant's surreptitious and unlawful transfer of personal information through the Tracking Beacon diminished Plaintiff's [ ] ability to participate in th[e] market [for such data] on informed terms, including to exercise the choice of whether to withhold, limit, or exchange [her] personal data for value." *Id.*, ¶ 54.

With respect to Plaintiff's intrusion upon seclusion claim, the FAC alleges that Plaintiff (and members of the putative Class) had objectively reasonably expectations of privacy regarding their interactions and communications with Chrysler and the Website, and that by deploying the Tracking Beacon Chrysler intentionally caused an intrusion into those interactions and communications by LiveRamp. *Id.*, ¶¶ 92-93. This all occurred without the consent of Plaintiff and members of the putative Class. *Id.*, ¶ 94. The deployment was intentional and perpetrated for Chrysler's economic benefit. *Id.*, ¶ 96. Further, the intrusion described in the FAC would be highly offensive to a reasonable person because it initiates a "dragnet-style collection … of individuals' online activities" and the creation of "comprehensive 'cradle to grave' profiles on individuals." *Id.*, ¶ 97.

The FAC asserts that Chrysler's actions, detailed above constitutes a violation of

Cal. Penal Code § 638.51. Section 638.51 prohibits the installation or use of a "trap and trace device," as defined in Cal. Penal Code § 638.50(c), without a court order. Section 638.50(c) defines "trap and trace device" as

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

Here, the FAC asserts that the Tracking Beacon meets the above definition because it captures information about Plaintiff, her location, her device and her browser contained on "electronic impulses" that are "incoming" to third parties and the Website, and the information constitutes "routing, addressing or signaling information" that is "reasonably likely to identify" Plaintiff and her device as the source of electronic communications. FAC (ECF No. 20), ¶¶ 78-87. The electronic communications in question are the data and/or signals exchanged between Plaintiff's device, on the one hand, and the Website – or the LiveRamp infrastructure to which the Tracking Beacon directs the information about Plaintiff and her visit – on the other hand, during Plaintiff's visit.[1]

## III. RELEVANT LEGAL STANDARDS

A facial attack to the Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is confined to the allegations in the complaint. *Wolf v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested." *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276, at *8 (N.D. Cal. Aug. 29, 2025) (quoting *Kokkonen v. Guardian Life Ins. Co. of*

[1] The term "electronic communication" as used in Cal. Penal Code § 638.50(c) (definition of "trap and trace device") is defined in pertinent part as "any transfer of signs, signals, [ ] data, or intelligence of any nature [ ] by a wire, radio [or] electromagnetic [. . .] system." Cal. Penal Code § 629.51(a)(2).

*Am.*, 511 U.S. 375, 377 (1994)).

Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## IV. THE COURT SHOULD DENY THE MOTION TO DISMISS

### A. Plaintiff has Article III Standing to Bring HER Claims.

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). Here, contrary to Chrysler's contentions, the FAC sufficiently alleges that she has suffered injuries in fact meeting the requirements of *TransUnion*.

The FAC alleges that Chrysler's subjection of Plaintiff to the Tracking Beacon both violated her privacy and caused her particularized, concrete injuries. The injuries include the creation of a non-consensual "linkable identity record" from her visit to the Website, a record that can be used for cradle-to-grave type tracking and profiling; LiveRamp's ongoing tracking and profiling of Plaintiff; Plaintiff's loss of control over data that can be used commercially to identify her for targeted advertisement purposes, as well as the diminishment of the value ***to her*** of such data; and the possible (or even likely) sale of such data by LiveRamp for purposes that have nothing to do with Plaintiff's visit to the Website.

Violations of individuals' rights to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to

privacy"). "A right to privacy 'encompass[es] the individuals' control of information concerning his or his person.'" *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 598-599 (9th Cir. 2020) (*"In re Facebook"*); *accord Haleon US*, 2025 U.S. Dist. LEXIS 169503, at *12-13 (holding that "the Ninth Circuit has not disavowed *[In re] Facebook* in the wake of *TransUnion*"). Binding Ninth Circuit precedent explains that various rights codified in CIPA ***are substantive and not procedural rights*** that are sufficient for Article III standing. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) ("The Ninth Circuit has found that each of the statutory claims brought here codify substantive rights to privacy.") (citations omitted).

Chrysler contends that under *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. Aug. 25, 2025), Plaintiff's failure to allege that that the Tracking Beacon collected or disseminated any specific "embarrassing, invasive or otherwise private information" from her August 2025 visit to the Website is fatal to Plaintiff's Article III standing. *See* Mot. (ECF No. 25) at 2:3-9; 5:18-6:22). ***Not so.***

Relying on the holding on standing and underlying facts found in the Ninth Circuit's decision in *In re Facebook*, a growing number of Ninth Circuit district courts have found standing where, as here, plaintiffs allege privacy harms caused by highly invasive tracking software such as the Tracking Beacon – even where their complaints do not identify specific "embarrassing, invasive or otherwise private information" collected or disseminated. *See, e.g., Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782, at *8-10 (C.D. Cal. May 5, 2026); *Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 LX 187347, at *4 (N.D. Cal. Apr. 21, 2026); *Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908, at *16-21 (C.D. Cal. Mar. 25, 2026); *Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303, at *14-16 (S.D. Cal. Mar. 12, 2026); *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 LX 11956, at *2-4 (N.D. Cal. Jan. 29, 2026); *Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193, at *3 (N.D. Cal. Jan. 27, 2026); *Krzyzek v. Openx Techs., Inc.*, 817 F. Supp. 3d 857, 862-64 (N.D. Cal. Jan. 27, 2026); *Hassid v. Alex*

*and Ani, LLC*, No. CV 25-0679 FMO (JCx), 2026 U.S. Dist. LEXIS 11238, at *5-7 (Jan. 20, 2026); *De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 LX 591947, at *4 (N.D. Cal. Dec. 22, 2025); *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1033 (C.D. Cal. 2025); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744, at *2, *22 (N.D. Cal. Nov. 24, 2025); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. Nov. 18, 2025); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, 2025 WL 2939229, at *10 (N.D. Cal. Oct. 16, 2025); *Deivaprakash v. Conde Nast Digit.*, No. 25-CV-04021-RFL, 2025 U.S. Dist. LEXIS 193968, at *3-5 (N.D. Cal. Sept. 30, 2025). Each of these cases were decided ***after Popa was issued in August 2025.***

In *In re Facebook*, the Ninth Circuit found that Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." 956 F.3d at 598. The Court further noted that "[a]s alleged in the complaint, this tracking occurred 'no matter how sensitive' or personal users' browsing histories were." *Id.* The *Facebook* Court concluded that such surreptitious "unauthorized exploration" of someone's private life and information constituted a cognizable and concrete Article III injury: "Here, Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm ***or a material risk of harm*** to their interest in controlling their personal information. As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information." *Id.* (emphasis added).[2] Similarly, the Second and Third Circuits have

---

[2] Notably, under *Popa*, 153 F.4th at 794, the holding in *In re Facebook*, as tethered to the factual allegations made in that case, still represents good law:

> More important, we need not revisit *Eichenberger* and *In re Facebook* in reaching our decision today. Despite the broad statements made therein, those decisions still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes. *See In re Facebook*, 956 F.3d at 598

determined that plaintiffs sufficiently alleged concrete, particularized injuries in fact for purposes of Article III and statutory standing where they alleged that defendants had caused monitoring of plaintiffs' web browsing across multiple websites, the building of detailed profiles based on plaintiffs' internet activity, and the related dissemination of such browsing data – precisely the type of activity Plaintiff alleges here. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017).

District judges of the Central, Southern and Northern Districts of California, relying in part on *In re Facebook*, have rejected Chrysler's position that in all data privacy/tracking software cases, the only basis for standing is an allegation that specific embarrassing or highly sensitive information about an individual or individuals was collected or transmitted. Rather, a significant number of them have found that Article III standing can be based upon the highly invasive, extensive and enduring nature of today's tracking software – software that operates across a large number of websites and disseminates information broadly. *See, e.g. Anschutz Ent. Grp.*, 2026 U.S. Dist. LEXIS 101782, at *8-10; *NCAA*, 2026 LX 158908, at *16-21; *Skullcandy*, 2026 LX 101303, at *14-16; *iHeartMedia*, 2026 LX 11956, at *2-4; *MyFitnessPal*, 2026 U.S. Dist. LEXIS 15193, at *3; *OpenX Techs.*, 817 F. Supp. 3d at 862-64; *Alex and Ani, LLC*, 2026 U.S. Dist. LEXIS 11238, at *5-7; *Inspire Brands*, 2025 LX 591947, at *4; *Pemberton*, 2025 LX 598744, at *2, *22; *Camplisson*, 809 F. Supp. 3d at 1106; *Dollar Tree Stores*, 2025 LX 466484, at *28-29.

Some of the above-cited cases rely also upon *U.S. Dep't of Justice v. Reporters*

---

> ("Plaintiffs alleged that Facebook continued to collect their data after they had logged off the social media platform, in order to receive and compile their personally identifiable browsing history. As alleged in the complaint, this tracking occurred 'no matter how sensitive' or personal users' browsing histories were.")

153 F.4th at 794.

*Committee,* 489 U.S. 749, 763 (1989), in which the Supreme Court held that the right to privacy "encompass[es] the individual's control of information concerning his or her person." *See, e.g., NCAA*, 2026 LX 158908, at *16-17; *iHeartMedia*, 2026 LX 11956, at *2-3; *OpenX Techs*, 817 F. Supp. 3d at 862-63. Several of the district court decisions cited here identify the ***plaintiffs' loss of control over information relating to them disseminated to third parties through contemporary tracking software*** as a concrete injury grounding Article III standing. *See, e.g., Anschutz Ent. Grp.*, 2025 U.S. Dist. LEXIS 101782, at *9-*10; *NCAA*, 2026 LX 158908, at *18-19; *iHeartMedia, Inc.*, 2026 LX 11956, at *4.

Importantly, in one of these decisions, *NCAA*, the court found in light of their allegations of pervasive and extensive cross-site tracking, plaintiffs were not required to provide the "level of detail" concerning disclosed data that the defendants demanded on a motion to dismiss. 2026 LX 158908, at *20-21 (The court also found that it was "inappropriate to resolve at the pleading stage" whether certain information disseminated through tracking software "was sufficiently offensive to be held actionable at common law. *Id.*)

Chrysler attempts to distract the Court with discussions of "generalized data like 'browser type' and 'IP address'." *See* Mot. (ECF No. 25), at 6:21-25. The FAC does not allege that the dissemination of such seemingly non-personal data alone represents an injury in fact. Rather, such data is raised by Plaintiff because it is part of the browser fingerprinting process that allows data brokers such as LiveRamp to identify individuals and then track them across a large number of websites. Further, Chrysler's contention that Plaintiff's allegation on "information and belief" that the Tracking Beacon resulted in the creation of enhancement of a profile of her is somehow deficient misses the point. Under the line of tracking software cases applying *In re Facebook* and *Reporters Committee* cited above, the allegations about the nature, actions and capabilities of the tracking software at issue in the case were found to be sufficient. Plaintiffs in these cases were not required to make specific allegations that they were individually exposed to the routine operation of such software. The reason for this is obvious. It is in the nature of software that it will

operate on individuals who are similarly situated in a uniform manner.

Chrysler's contention that Plaintiff has failed to demonstrate "traceability" for purposes of Article III standing (Mot., at 8:13-9:9) is similarly unavailing. The FAC alleges that Chrysler installed and deployed the Tracking Beacon for its economic benefit, and that the Tracking Beacon caused data identifying Plaintiff to be transmitted to LiveRamp, thus ushering Plaintiff into an invasive and extensive profiling and tracking regime in which she lost control of such data. Thus Plaintiff's injury is traceable to Chrysler's actions. Chrysler's arguments in this regard clash with the fact that the statute under which Plaintiff filed one of her claims, § 638.51, prohibits installation or use of a trap and trace device

**B. The FAC Sufficiently States Claims Against Chrysler.**

Plaintiff has sufficiently alleged that Chrysler violated § 638.51 and committed the tort of intrusion upon seclusion. None of Chrysler's arguments asserting that Plaintiff has failed to state a cause of action withstand basic scrutiny.

**1. The Tracking Beacon is a Trap and Trace Device.**

*a. Cal. Penal Code §§ 638.50-51 Apply to Software & Websites*

Software or code running on websites that "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication" constitutes a trap and trace device under §§ 638.50-51. *See, e.g., Biglang-Awa-Castro v. SBE Restaurant Group, LLC*, 25VECV03590, 2026 Cal. Super. LEXIS 25177, at *3-4 (L.A. Co. Super. Ct. Apr. 16, 2026); *Schallert v. RocketGenius*, 25STCV35081, 2026 Cal. Super. LEXIS 25177, at *3-4 (L.A. Co. Super. Ct. March 24, 2026); *Hassid v. Alex & Ani, LLC*, 2026 U.S. Dist. LEXIS 11238, at *4-7 (C.D. Cal. Jan. 20, 2026); *Casillas v. Lucky Opco LLC,* 25STCV03961, 2026 Cal. Super. LEXIS 24132, at *5-6 (L.A. Co. Super. Ct. Jan. 5, 2026); *Casillas v. Six Flags Ent. Corp.*, 2025 U.S. Dist. LEXIS 260100, at *21-22 (C.D. Cal. Dec. 15, 2025); *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *39-42 (C.D. Cal. Dec. 4, 2025); *Santoro v. Lulu & Georgia, Inc.*, 25STCV11722, 2025 Cal. Super. LEXIS 84529, at *8-9 (L.A. Co. Super. Ct. Nov. 21,

2025); *Zhizhi Xu v. Reuters News & Media, Inc.*, 25CV459918, 2025 Cal. Super. LEXIS 76169, at *8-10 (Santa Clara Co. Super Ct. Oct. 24, 2025); *Scarlett v. Future US, LLC*, CGC-25-621912, 2025 Cal. Super. LEXIS 56166, at *11-14 (S.F. Co. Super. Ct. Sept. 5, 2025); *Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745, at *10-15 (N.D. Cal. Sep. 2, 2025); *Valenzuela v. Intersystems Corp.*, 2025 Cal. Super. LEXIS 42550, at *3-4 (Orange Co. Superior Ct. Aug. 4, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075, 1093-1094 (N.D. Cal. July 18, 2025); *Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *30-32 (N.D. Cal. July 14, 2025); *Price v. Headspace, Inc.*, 2025 Cal. Super. LEXIS 27951, at *3-9 (L.A. Super Ct. Apr. 1, 2025); *Sanchez v. Glasscanopy, Inc.*, 2025 Cal. Super. LEXIS 18460, at *8-9 (L.A. Super. Ct. Feb. 28, 2025); *Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076, at *8 (C.D. Cal. Feb. 3, 2025); *Conohan v. Rad* Power *Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246, at *16 (C.D. Cal. Apr. 3, 2025); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930-931 (N.D. Cal. October 21, 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076-1077 (C.D. Cal. July 25, 2024). This is because the plain wording of the sections is unambiguously broad, encompassing internet technology and software.

Numerous of the above cited decisions reject the contention that the use of the phrases "telephone number" and "telephone line" in § 638.52 either limits the Trap and Trace Law to telephone technology or renders §§ 638.50-51 ambiguous. *See, e.g., Samba TV*, 2026 LX 187347, at *21; *MyFitnessPal*, 2026 U.S. Dist. LEXIS 15193, at *22-23; *C2 Educ. Sys.*, 742 F. Supp. 3d at 1076; *Fandom, Inc.*, 754 F. Supp. 3d at 930.[3]

---

[3] Plaintiff submits that Cal. Penal Code §§ 638.50-51 unambiguously encompass electronic or wire communication ***occurring over the internet and between devices and websites***, even when read in the context of § 638.52 and other surrounding CIPA provisions. Accordingly, Plaintiff disagrees with Chrysler's contention that the court must apply the "rule of lenity" in applying §§ 638.50-51. *See* Mot. (ECF No. 25), at 15:4-14.). The rule of lenity only applies in very limited circumstances, where there are

Moreover, the history of these statutory provisions establishes that the language used therein – particularly with respect to the definition of a "trap and trace device" – was enacted in 2015, and was copied from federal statutes that were intended by Congress to apply to the internet, and which courts have held to apply to software. That history is discussed extensively in the FAC. *See* FAC (ECF No. 20, at 8:24-12:11).

*b. The FAC Does Not Allege that the Tracking Beacon Collected the "Contents of a Communication"; Additionally Such Transfers Would Not Defeat Plaintiff's § 638.51 Claim.*

Chrysler contends that the FAC's allegation that a visitor's movement among webpages on the Website "***can*** reveal private facts about" the visitor's "finances, purchasing intent, geographic location, as well as the needs of her household" (FAC, ECF No. 20, at 5:21-22) means that the Tracking Beacon cannot be a trap and trace device under the definition set forth in § 638.50(c). First, the FAC does not allege that such "private facts" about ***Plaintiff*** were revealed during Plaintiff's visit to the Website. Second, under the caselaw, URLs of webpages are not always or uniformly deemed by courts to represent "the contents of a communication" within the meaning of § 638.50.

Further, even if the FAC ***did*** allege that the Tracking Beacon captured both recording data ***and*** the contents of communications, under the most appropriate interpretation of the Trap and Trace Law the Tracking Beacon would still constitute a trap and trace device under Cal. Penal Code § 638.50(c). This is for 2 reasons. First, it is doubtful that the California Legislature, who enacted CIPA to protect Californian's privacy, would intend for a defendant to evade liability for utilizing a tool that both operates as an eavesdropping

---

two reasonable interpretations of a statute that "stand in relative equipoise." *Smith v. LoanMe*, 11 Ca.5th 183, 202 (2021); *Deivaprakash v. Condé Nast Digit.*, 798 F. Supp. 3d 1100, 1107-08 (N.D. Cal. 2025). Here, Plaintiff's interpretation, based on the broad, plain language of the definitions of "trap and trace device" and "electronic communication" is far more reasonable than Chrysler's attempt to narrow these statutes based upon law enforcement techniques that appear to have been in use in 2015, when the Trap and Trace Law was enacted, addressed in § 638.52. *See Conde Nast Digit.*, 798 F. Supp 3d at 1107-08.

device, and one that identifies the source of a communication. An interception claim under Cal. Penal Code § 631(a) for devices that facilitate eavesdropping on the contents of a communication is subject to limitations that are not applied to claims based on trap and trace devices or pen registers, such as the party exception. Moreover, an obvious purpose served by the language "but not the contents" is to maintain confidentiality over expressive speech from government oversight in situations where law enforcement provides sufficient justification for obtaining pen register or trap and trace orders to address criminal activity. Such purpose is not implicated in the context of a civil action against a private entity.

Under relevant caselaw, the fact that specific software operating on a website is capable of capturing the contents of visitors' communications with the site ***does not mean that the software cannot also constitute a trap and trace device or a pen register*** under § 638.51(a) for enabling the identification of the source of electronic or wire communications at the same time. *See, e.g., MyFitnessPal*, 2026 U.S. Dist. LEXIS 15193, at *23; *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152-55 (N.D. Cal. 2025) (holding the phrase "but not the contents of a communication" as used in Cal. Penal Code § 638.50 (b) (pen register) should be "interpreted to define a pen register as any device that records 'dialing, routing, addressing, or signaling information' while clarifying that a device that records only 'the contents of a communication' is not a pen register, and is instead subject solely to CIPA's wiretap provisions" in order to effectuate the California Legislature's intent); *Shahnaz Zarif v. Hwareh.com, Inc.* (S.D. Cal. Feb. 12, 2025), No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519, at *39 (denying a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) claims filed under Cal. Pen. Code §§ 631(a) and 638.51 based on a website's use of related software).

**2. The Consent Exemption of § 638.51(b)(5) Does Not Apply Here.**

The Court should reject Chrysler's contention that it is exempt from § 638.51(a) under the consent exemption in § 638.51(b)(5). *See* Mot., at 10:27-13:20. The exemption

is only available to a "provider of electronic or wire communication service." § 638.51(b). Chrysler does not directly assert that it is such a "provider."[4]

The argument fails at the threshold because this is a pleading challenge, and the FAC alleges that Chrysler is ***not*** a provider of communication service. *See* FAC (ECF No. 20), ¶ 87. Chrysler has failed to cite any caselaw establishing that it is such a provider as a matter of law. Further, California district and state courts have refused to rule in the context of a pleading challenge that the operation of a website alone constitutes a "communication service" for purposes of CIPA. *See, e.g., Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 LX 273067, at *32-33 (N.D. Cal. July 14, 2025); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378, at *13-14; *Glasscanopy, Inc.*, 2025 Cal. Super. LEXIS 18460, at *9-10; *Sanchez v. Weber-Stephen Prods. LLC*, 2024 Cal. Super. LEXIS 72373, at *9-10 (Super. Ct. L.A. Co. June 4, 2024); *Casillas v. Transitions Optical, Inc.*, 2024 Cal. Super. LEXIS 68029, at *5 (Super. Ct. L.A. Co. Apr. 23, 2024).[5]

Moreover, California district and state courts have rejected arguments that a website operator is a "user" of electronic or wire communication service for purposes of the consent exemption of § 638.51(b)(5). *See, e.g., Camplisson*, 809 F. Supp. 3d at 1108; *C2 Educ. Sys. Inc.*, 742 F. Supp. 3d at 1077; *Lucky Opco LLC,* 2026 Cal. Super. LEXIS 24132, at *5-6.

**3. The FAC States a Claim For Intrusion Upon Seclusion.**

The FAC alleges that Plaintiff had an expectation of privacy in her interactions with the Website. Further, the FAC alleges that the Tracking Beacon defeats that expectation

---

[4] In the event Chrysler makes such an assertion on reply, a "district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *see also Est. of Dominguez v. Estes Express Lines, Inc.*, No. 2:25-cv-10514-DSF-MAR, 2026 LX 314584, at *13 n.11 (C.D. Cal. June 24, 2026).

[5] The burden to establish status as a "communication service" provider falls upon the defendant seeking to avail itself of the consent exemption. *See, e.g., Gabrielli*, 2025 LX 273067, at *32-33; *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *14.

and intrudes upon those interactions in a manner that would be considered highly offensive to a reasonable person and an egregious breach of social norms. This is because deployment of the Tracking Beacon leads to the creation or enhancement of extensive profiling of her, and ongoing tracking of her activity on the internet, covering a large number of websites.

Deployment of tracking software that engages in the type of identification, profiling and tracking carried out by the Tracking Beacon that Defendant installed on the Website forms the basis of an actionable intrusion upon seclusion claim under California law. *See, e.g., Caldwell v. InMobi Pte., Ltd.*, No. 25-cv-09977-AMO, 2026 LX 229530, at *7-14 (N.D. Cal. Apr. 29, 2026); *Six Flags Ent. Corp.*, 812 F. Supp. 3d at 1029-1030; *OpenX Techs*, 817 F. Supp. 3d at 864-65; *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 LX 445234, at *8 (N.D. Cal. Oct. 16, 2025). These cases found that plaintiffs had a reasonable expectation of privacy that their visit to a commercial website would not give rise to ongoing, pervasive tracking and profiling of them, capturing all sorts of information based on their activity on the website, but also on other websites in the future. *See, e.g., OpenX Techs*, 817 F. Supp. 3d at 865 (finding reasonable expectation of privacy where the defendant "allegedly tracks, compiles, and sells massive amounts of information on plaintiffs, without their knowledge that [a] pixel [created by defendant] has been loaded onto a given website"); *Six Flags Ent. Corp.*, 812 F. Supp. 3d at 1030 (similar).

Moreover, the determination of whether the intrusion by the Tracking Beacon on the Website would be highly offensive to a reasonable person can rarely be decided as a matter of law, as opposed to a question of fact; therefore courts typically refuse to make such a determination on a pleading challenge. *See, e.g., OpenX Techs*, U.S. 817 F. Supp. 3d at 864-65 ("courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is") (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019)).

Chrysler's arguments on the intrusion claim are unavailing. First, Plaintiff is alleging that Chrysler ***caused*** an intrusion upon seclusion by LiveRamp by installing the Tracking

Beacon on its Website. *See Six Flags Ent. Corp.*, 812 F. Supp. 3d at 1029-30 (denying a motion to dismiss an intrusion upon seclusion claim against website operator defendant Six Flags, based on its installation and use of "third-party cookies" – the equivalent of tracking software like the Tracking Beacon). Moreover, the cases cited above found that the type of allegations about tracking and profiling found in the FAC here sufficiently allege the expectation of privacy and offensiveness elements of the tort.

## V. CONCLUSION

For the reasons stated herein, the Court should deny in its entirety Chrysler's Motion to Dismiss the First Amended Complaint.

DATED: June 26, 2026

**TAULER SMITH LLP**

By: */s/ J. Evan Shapiro*
J. Evan Shapiro, Esq.

*Attorneys for Plaintiff Wendy Blalock*

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Wendy Blalock, certifies that this brief is 5,781 words, which complies with word limit set by L.R. 11-6.1.

DATED: June 26, 2026

**TAULER SMITH LLP**

By: */s/ J. Evan Shapiro*
J. Evan Shapiro, Esq.

*Attorneys for Plaintiff Wendy Blalock*