UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **SA CV 26-201-DMG (KESx)** | Date | August 14, 2026 |
| Title | ***Wendy Blalock v. FCA US, LLC, et al.*** | Page | 1 of 7 |

| | |
|---|---|
| Present: The Honorable | DOLLY M. GEE, CHIEF UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| DEREK DAVIS | NOT REPORTED |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [25]**

Plaintiff Wendy Blalock brings this action individually and on behalf of all similarly situated in California against Defendant FCA US, LLC ("FCA"). [Doc # 20 (First Amended Complaint ("FAC"))]. Before the Court is Defendant's motion to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for a failure to state a claim upon which relief can be granted. [Doc. # 25 ("MTD").] The motion is fully briefed. [Doc. ## 26 ("Opp."), 27 ("Reply").] For the reasons set forth below, the Court **GRANTS** the motion to dismiss under Rule 12(b)(1).

## I.
## FACTUAL BACKGROUND[1]

Plaintiff sues on behalf of all persons in California who have visited FCA's website https://www.chrysler.com (the "Website"). FAC at ¶¶ 2, 63. FCA uses the Website to market vehicles and related services to consumers in California and throughout the United States. *Id.* at ¶ 2. Plaintiff alleges FCA embedded tracking software (the "Tracking Beacon") by LiveRamp, a data broker, onto its website. *Id.* at ¶ 3. Plaintiff brings two causes of action: (1) violation of California's Invasion of Privacy Act ("CIPA") section 638.51 and a common law intrusion upon seclusion claim. *Id.* at ¶¶ 6, 91. Plaintiff visited the Website August 24, 2025. *Id.* at ¶ 46. According to Plaintiff, the Tracking Beacon "capture[s] and export[s] visitor-identifying information to a third-party data broker so the visit can be tied to an identity profile and used for cross-site tracking, targeting, and monetization" for commercial and financial benefit. *Id.* at ¶¶ 1, 3. Plaintiff claims FCA has constructive knowledge that the Tracking Beacon operated on the Website. *Id.* at ¶ 18.

[1] The Court assumes the truth of the material allegations in the FAC solely for the purpose of deciding the MTD.

First, the Tracking Beacon collects the following data about the Website user when the user visits the Website:

> (i) the specific page and resource addresses the visitor requests from the Website (including paths and parameters identifying the content being requested); (ii) referrer and source fields showing how the visitor arrived at the Website and the prior page or channel that directed the request; (iii) browser- and device-signaling fields that describe the visitor's client environment (e.g., browser family and version, operating system family and version, language/locale settings, time zone, screen and rendering characteristics, and related client "fingerprint-like" attributes); and (iv) unique request and session identifiers and timestamps generated during the visit that allow multiple page requests to be grouped and attributed to the same source.

*Id.* at ¶¶ 4, 38. The Tracking Beacon also collects the "addressing and routing data embedded in the [user's] web requests and the Website's responses" and "data that functions as the communication's 'to/from' and routing instructions that can be used to recognize and link a [user's] communications over time." *Id.* at ¶ 39.

LiveRamp is a data broker that "specializes in deanonymizing website visitors" by matching the data collected "to a broader identity database and assigning or retrieving a persistent identifier associated with the visitor." *Id.* at ¶ 42. When the foregoing Website user information is "linked to an identity profile" it becomes "attributable to a specific individual[.]" *Id.* at ¶ 40. LiveRamp has a "vast database" of "RampIDs." *Id.* at ¶ 43. The Tracking Beacon sends the data collected to LiveRamp's servers where LiveRamp "combines" the data with "other data it has obtained about the individual both online and offline." *Id.* The matching and "identification" process occurs in "real-time" when the Website user visits the Website. *Id.* at ¶ 44. Once the Website visitor is identified, the profile is "enrich[ed]" and used "to support targeting far beyond the context of the Website visit." *Id.* at ¶ 48. If the Website visitor does not have an existing RampID, LiveRamp creates one and uses it as a "starting point for ongoing browsing tracking and enhancement." *Id.*

The data in LiveRamp's database "may include a visitor's name and postal address, email address, cookie IDs, and mobile device IDs." *Id.* at ¶ 43. The RampID is permanent and tracks the individual's activity across "thousands" of websites and across devices. *Id.* at ¶¶ 43, 44. Plaintiff alleges these RampIDs are "shared" with ad tech partners "so that all parties who pay for it can identify the user[] and see the user's online habits." *Id.* at ¶ 43. On information and belief, Plaintiff alleges LiveRamp "obtains commercial value" from the Tracking Beacon. *Id.* at ¶ 50.

Plaintiff also alleges the data collected has economic value and there is a market for the data. *Id.* at ¶¶ 51, 54.

Plaintiff did not consent to the Tracking Beacon's collection of his data. *Id.* at ¶¶ 47, 60. Plaintiff claims he faces an ongoing risk that his RampID and associated information will be "repurposed, shared, or sold within the data-broker ecosystem[.]" *Id.* at ¶ 60.

## II.
## LEGAL STANDARD

### A. Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may make a facial or a factual attack on a federal court's subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack is a contention that a plaintiff's allegations are insufficient to invoke federal jurisdiction, while a factual attack contests the truth of the allegations that would otherwise invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In the Court's view, FCA's MTD represents a facial attack. In a facial attack, courts "presume the truthfulness of the plaintiff's allegations" and assess whether subject matter jurisdiction exists. *Id.* (citation omitted). If a court determines that it lacks jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the [action]." *Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

## III.
## DISCUSSION

### A. Article III Standing

Article III standing derives from the Constitution, which limits the jurisdiction of federal courts to cases and controversies. Art. III, § 2; *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks and citation omitted). The plaintiff bears the burden of demonstrating standing. *Id.* at 430–31. The plaintiff must allege an injury that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *Lujan*, 504 U.S. at 560–61; *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). An alleged harm must be "concrete and particularized" and "actual or imminent, not conjectural

or hypothetical" to qualify as an injury-in-fact. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000).

FCA argues Plaintiff failed to allege any "concrete and particularized" harm and, even if there is harm, it is not traceable to the challenged action. MTD at 13, 16.[2] A concrete injury "must actually exist" and should not be abstract. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In 2020, the Ninth Circuit held that the plaintiffs in a CIPA action had standing to bring their claims. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020). Specifically, the Ninth Circuit held "[v]iolations of the right to privacy have long been actionable at common law" and "[a] right to privacy encompass[es] the individual's control of information concerning his or her person." *Id.* at 598 (internal quotation marks and punctuation omitted). Regarding CIPA, the Ninth Circuit held that it codified a substantive right to privacy, which gave rise to a concrete injury sufficient to confer standing. *Id.*

In 2021, the Supreme Court issued *TransUnion LLC* wherein it held "[v]arious intangible harms can . . . be concrete," "[c]hief among them [being] injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Congress may elevate existing harms but "may not simply enact an injury into existence[.]" *Id.* at 426. "[A]n injury in law is not an injury in fact." *Id.* at 427. Following *TransUnion*, the Ninth Circuit assessed whether a plaintiff in a consumer privacy action for use of software on a website had Article III standing. *Popa v. Microsoft Corp.*, 153 F. 4th 784 (9th Cir. 2025). The Ninth Circuit held district courts should "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Id.* at 791.

Contrary to Plaintiff's argument, *TransUnion* and *Popa* have made clear that plaintiffs cannot rely upon a general freestanding "right to privacy" without more. *See* Opp. at 13; *Popa*, 153 F.4th at 792 ("[Plaintiff's] broad theory that the common law protected privacy rights—pitched at a high level of generality—does not align with the analysis adopted in *TransUnion*."). Indeed, plaintiffs in CIPA actions may no longer rely solely upon a "statutory right" codified by CIPA. *See In re Facebook*, 956 F.3d at 598. Instead, the Court must address whether the plaintiff's alleged harms "hold a close relationship to" traditionally recognized harms.

The traditional harms of "disclosure of private information" or "intrusion upon seclusion" are applicable to Plaintiff's allegations. *TransUnion*, 594 U.S. at 425 (listing both torts as examples of traditionally recognized harms); *accord Hassid v. Alex & Ani, LLC*, 816 F. Supp. 3d

[2] All page citations herein refer to the number inserted by the CM/ECF system.

1196, 1201 (C.D. Cal. 2026) (finding the concrete injury in a CIPA action, under *TransUnion*, holds a close relationship to the historical tort of "disclosure of private information").[3]

The disclosure of private facts tort prohibits the "disclosure . . . of a private fact . . . which would be offensive and objectionable to the reasonable person, and . . . which is not legitimate public concern." *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) (quoting *Taus v. Loftus*, 40 Cal. 4th 683, 717 (2007)). "[M]isrepresenting how private information will be used can constitute such an invasion of privacy." *Id.*; *see also Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1134 (N.D. Cal. 2025). Intrusion upon seclusion is where there is intentional interference with a person's interest in solitude of a kind that would be highly offensive to a reasonable person. *Popa,* 153 F. 4th at 791 (citation omitted). Courts consider the "degree and setting of the intrusion" along with "the intruder's motives and objectives" when determining whether an invasion is highly offensive. *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 868 (N.D. Cal. 2025) (citation omitted).

In data breach cases, courts consider the nature of the information at issue. *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025) (citing *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) and *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022)). "The sensitivity of the information at issue is also relevant in determining whether the plaintiff has adequately pleaded Article III injury." *Shah*, 824 F. Supp. 3d at 914.

Here, Plaintiff alleges the Tracking Beacon collects non-identifying visitor data (e.g., browser and router information). Similar to IP addresses, this information alone would be insufficient to give rise to a concrete injury—it does not identify or otherwise disclose a Website user's private information in a "highly offensive" way. *See Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025) (finding no concrete injury from the collection of email addresses and IP addresses). Plaintiff alleges, however, more than the benign collection of visitor data. Taking all facts in the FAC as true, LiveRamp operates as a data broker and de-anonymizes the Website user by matching the visitor data with its internal database of permanent RampIDs. There is no other purpose alleged by Plaintiff for this database other than to use the Tracking Beacon's collected information to identify the Website user.

As a whole, this is more than the session-replay technology in *Popa* which merely collected where the Website user clicked on a pet supply website. *See Popa*, 153 F. 4th at 786; *accord Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 863 (N.D. Cal. 2026) (distinguishing

[3] The Ninth Circuit in *Popa* did not reject the concept of a tort based upon the "disclosure of private information." Rather, it reiterated the standard set forth in *TransUnion* wherein the Supreme Court listed "disclosure of private information" as an example of a traditionally recognized harm. *Popa*, 153 F.4th at 792.

plaintiff's concrete injury from *Popa* on the same basis), *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) (same). Furthermore, Plaintiff alleges more than a mere risk that the RampIDs *might* be sold by undisclosed parties. *See Wooten*, 807 F. Supp. 2d at 1145 (finding plaintiff's allegation that third-party trackers *could* use the information too speculative to be an "actual" injury). LiveRamp is, as alleged, engaged in the business of identifying the Website user by employing the Tracking Beacon and selling the user's information for commercial profit. FAC at ¶¶ 1, 3, 43.

Where Plaintiff's claims falter is whether *Plaintiff's* information was de-anonymized by LiveRamp based upon *her* browsing on FCA's Website. When LiveRamp lacks an existing RampID to match to the Website user's activity, it creates a new RampID. Plaintiff does not allege that she had an existing RampID when she visited FCA's Website or facts that would lead to the reasonable inference that her identity was revealed through her activity on the Website. Unlike *In re Facebook*, the gravamen of the harm here cannot occur without a pre-existing RampID or matching by the non-Defendant LiveRamp. In *In re Facebook*, Facebook collected personally identifiable browsing history connected to the user's personal Facebook profile. 956 F.3d at 599. As alleged, Facebook's tracking and collection practices were necessarily linked to the identifiable plaintiff through her Facebook account. Here, the disclosure of sensitive information—plaintiff's identity—is too far attenuated from the chain of speculative events set forth in the FAC. *Accord Schallert v. Laird Superfood, Inc.*, No. CV 25-12407-SPG (PVCx), 2026 WL 1707585, at *5 (C.D. Cal. June 5, 2026) (finding plaintiff lacked a concrete injury where he failed to allege what specific information the website captured from him).

Indeed, this action is unlike cases where the information collected in the first instance was already sensitive in nature. *See Krzyzek*, 817 F. Supp. 3d at 863–64 (finding standing where defendant collected deanonymized cookies, IP addresses, hashed email addresses, HTTP headers, location information, interests and sociopolitical views); *Shah,* 817 F. Supp. 3d at 914 (defendant collected information related to nutrition and fitness tracking); *In re Blue Shield of California Priv. Litig.*, --- F. Supp. 3d ---, No. CV 25-03209-YGR, 2026 WL 2040561, at *4 (N.D. Cal. July 10, 2026) (defendant collected healthcare-related communications associated with the plaintiffs' identities); *Garcia v. Truist Financial Corp.*, 825 F. Supp. 3d. 1149, 1161–1162 (C.D. Cal. 2026) (defendant disclosed plaintiff's citizenship, housing status, and employment status to LinkedIn who knew his full name); *Camplisson*, 809 F. Supp. 3d at 1100 (defendant collected personal identifying and addressing information such as names, date of births, and addresses); *Gabrielli*, 815 F. Supp. 3d at 867 (defendant collected name, age, gender, email address, location, payment information, and demographic location).

Furthermore, Plaintiff has not shown the injury is traceable to actions by the defendant in this action: FCA. There must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotation marks and punctuation omitted). Although Plaintiff alleges FCA had "constructive knowledge" of the Tracking Beacon running on its Website, it does not allege any facts showing a connection between LiveRamp's de-anonymization process and FCA. *See* FAC at ¶ 18. For example, if FCA installed the Tracking Beacon pursuant to terms and conditions by LiveRamp that lay out the Tracking Beacon's function and LiveRamp's real-time return of Website user identifications, a more causal connection could be present. Moreover, Plaintiff does not allege any benefit to FCA that could reasonably suggest FCA's participation. Plaintiff claims FCA obtains "commercial value" including "more precise audience building and targeting solicitation" from LiveRamp's identification. *See id.* at ¶ 50. This vague and conclusory assertion, however, is not supported by the facts which suggest LiveRamp, on its own, collects visitor data, connects it to existing RampIDs, and sells that data for its own benefit.[4] *See id.* at ¶¶ 43–44.

In sum, Plaintiff has not met her burden of demonstrating her Article III standing to bring this action against FCA. Because Plaintiff could allege facts showing an injury-in-fact and amendment would not be futile, the Court will grant Plaintiff leave to amend. *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991).

**IV.**
**CONCLUSION**

In light of the foregoing, FCA's motion to dismiss for lack of standing is **GRANTED** and the FAC is **DISMISSED with leave to amend**. The remainder of FCA's motion to dismiss is **DENIED without prejudice**.[5] If Plaintiff wishes to file a Second Amended Complaint ("SAC"), Plaintiff shall do so by **September 4, 2026**. FCA shall file its response within 21 days after any SAC is filed.

**IT IS SO ORDERED.**

---

[4] The Court notes this case is unlike *Riganian* wherein the plaintiff brought suit against LiveRamp for CIPA violations. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025). There, the district court denied LiveRamp's motion to dismiss plaintiff's section 638.51 pen register claim based upon allegations largely aligned with the facts at issue. *Id.* at 1080–81 (setting forth plaintiff's allegations that LiveRamp is a data broker who collects unassociated personal information, synchronizes that data into identifiable RampIDs, and sells the RampIDs on an online ecosystem it manages).

[5] Because the Court dismisses this case for lack of standing, the Court need not address FCA's motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).